### CAPUANO v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. November 21, 1925.)

#### No. 1886.

**I. Bribery ⬤—I (2)—Bribery of federal prohibition agent is an offense.**

Bribery of federal prohibition agent is an offense under Penal Code, § 39 (Comp. St. § 10293).

**2. Criminal law ⬤—37—Refusal of requested instructions and instruction given as to entrapment held error.**

Refusal of instruction on hypothesis that accused never conceived intention of bribing prohibition agents, but was incited and lured into committing offense by government officers in order to entrap him, and charging instead that the fact that officers offered defendant chance for bribing them was no defense, unless agents went to defendant for purpose of framing him, or having defendant give bribe, *held* error.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Eugene L. Capuano was convicted of bribing federal prohibition agents, and he brings error. Reversed, verdict set aside, and case remanded.

Thomas J. Boynton, of Boston, Mass. (James A. Hatton, of Boston, Mass., on the brief), for plaintiff in error.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. Capuano was convicted of giving money as bribes to prohibition agents described in the indictment as "acting in behalf of the United States in an official function * * * as agents for the Commissioner of Internal Revenue."

[1] His contention that it is no offense under section 39 of the federal Penal Code (Comp. St. § 10203) to bribe a prohibition agent, is without merit. Sears v. United States (C. C. A.) 264 F. 257, 260, and cases cited. The indictments were sufficient. The only question calling for serious consideration is as to the instructions to the jury concerning entrapment.

Capuano held a denatured alcohol permit, under which he was allowed, monthly, 400 gallons of 39b alcohol for use in his business as a manufacturer of hair tonics and toilet preparations.

Shortly stated, the government's case was that at about 5:30 in the morning of October 23, 1924, two prohibition agents (inferentially because of some prior information as to Capuano's selling alcohol) went to Capuano's premises in Everett; that as they approached a truck departed; that they found there Capuano and another man, who said they were about to leave on a hunting trip; that Capuano, of his own initiative, offered them

money "if you will not harm my permit," and then obtained and paid over to one of the agents $80; that two days later, at the prohibition office in Boston, he whispered to an agent: "I have $200 here to give to the boss; * * * say, I will give you $200, and $100 next week, if you will not harm my permit, and do me no harm. Call it square, and let's be friends." The $200 was paid to the agents, and Capuano was then arrested.

Capuano took the stand and gave a radically different account of the transaction. He said that on this morning of October 23, 1924, he was dressed in a sweater and old clothes, preparatory to going hunting; that Prohibition Agent Roffman came to his place and asked why the barrels of alcohol were where they were, to which the defendant replied that it was his custom to keep the alcohol where it was, and "that in the immediate vicinity was his mixing bowl."

The record continues:

"That a short time after Agent Lorden came in, and after some conversation started kicking and slapping him, whereupon the defendant asked Agent Lorden why he was abusing him in that manner; that Agent Lorden then left the premises of the defendant, and while Lorden was out of the defendant's store, fixing the lights on his automobile, Agent Roffman stated that Agent Lorden got a little nervous once in a while, but he was a good fellow; then Agent Roffman stated to the defendant, 'You give him something,' whereupon the defendant replied that he had nothing to give him, except $80, which he had in his pocket, and which were the receipts for his business of the previous days, and that he had to pay bills with that money, whereupon Agent Roffman said, 'Go ahead;' that the defendant, being afraid something would happen to his name and that he would lose his business, and being afraid of his life and limb paid $80 to Agent Lorden; that some time after Agent Roffman said: 'What do you suppose that we are—dumbbells? This is not enough. Get some more money, and we will see what we can do for you.'"

Capuano further testified that later he went to prohibition headquarters, and was there told by Roffman that "the thing for the defendant to do was to go in and see the boss and give him some money"; that thereupon he borrowed from different friends $200, went back to the office, and at Roffman's direction gave the money to Early— "being at times afraid that the agents would do him bodily harm." This was the substance of Capuano's testimony.

There was some evidence tending to corroborate Capuano's testimony, both as to the assault and as to the prohibition agents' demand for money.

[2] On this issue the defendant's sixth request for instructions was as follows:

"(6) If the jury are satisfied that prior to the commission of the acts alleged that the defendant never conceived any intention of committing these offenses or any similar offenses, but that the officers of the government incited and by suasion and representations lured him to commit the offenses alleged in order to entrap, arrest, and prosecute the defendant therefor, then these facts are fatal to the prosecution of these offenses, and the defendant is entitled to a verdict of not guilty."

The court refused this request, "and charged in substance that to find the fact that the government agents offered the defendant a chance or made it easier for them to be bribed, that did not constitute a defense to this criminal action; to find the defendant not guilty, provided they find that he had given the money to the government agents, they must be satisfied that the government agents went to the premises of the defendant for the purpose of framing him, or for the purpose of having the defendant give him a bribe."

We think this was error.

The government now concedes, as it must, that the sixth request states the applicable rule with substantial accuracy. It was not given, in substance or in effect. On the contrary, the jury were in effect told that, in order to sustain this defense, they must find that the agents went to Capuano's premises for the purpose of having him give them a bribe. It would be immaterial whether they went there for the purpose of investigating his compliance or noncompliance with the terms of his alcohol permit, if, after their arrival, they, and not Capuano, originated the bribery. The case falls within the rule laid down in Newman v. United States (C. C. A.) 299 F. 128, 131, as follows:

"It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound

public policy from prosecution · therefor. 'The first duties of the officers of the law are to prevent, not to punish, crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it.'"

See, also, Butts v. United States (C. C. A.) 273 F. 35, 38, 18 A. L. R. 143; Peterson v. United States, 255 F. 433, 166 C. C. A. 509, and cases cited; Zucker v. United States (C. C. A.) 288 F. 12, 14; Luterman v. United States (C. C. A.) 281 F. 374; Napolitano v. United States (C. C. A.) 3 F. (2d) 994.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.