[No. 32669.  *En Banc.*  August 5, 1954.]

*In the Matter of the Application for a Writ of Habeas Corpus of* W. H. BUCKINGHAM, *Petitioner*, v. JOHN R. CRANOR, *as Superintendent of the State Penitentiary,  Respondent.*[1]

*Adolf D. Koch,* for petitioner.

*The Attorney General* and *Cyrus A. Dimmick, Assistant,* for respondent.

[1]Reported in 273 P. (2d) 494.

OLSON, J.—Petitioner is held by respondent under a judgment and sentence valid and regular on its face. It was entered May 25, 1950, upon the verdict of a jury convicting petitioner of the crime of incest, by a court which had jurisdiction of the person of petitioner and of the subject matter of the offense charged.

These facts limit the scope of our inquiry in a *habeas corpus* proceeding. See *In re Mason v. Cranor*, 42 Wn. (2d) 610, 612 *et seq.*, 257 P. (2d) 211 (1953), and cases cited. Apparently recognizing that limitation, petitioner pleads that certain rights guaranteed to him by the constitution of the state of Washington or of the United States have been violated. He argues that we are obliged to examine these contentions, under the 1947 amendment to the statute pertaining to *habeas corpus*. RCW 7.36.130(1), 7.36.140 [*cf.* Rem. Supp. 1947, §§ 1075(1), 1085-2].

His principal reliance is placed upon the claim that he was denied his "right to counsel" and "due process," because of the inexperience and incompetency of counsel appointed for him, and because the early assignment of this case for trial deprived him of adequate time to prepare his defense. See *State v. Hartwig*, 36 Wn. (2d) 598, 601, 219 P. (2d) 564 (1950).

The facts are that, May 3, 1950, petitioner was charged in the superior court for Pacific county with the crime of incest, alleged in the information to have been committed with his daughter, then nine years of age. May 5, 1950, the court appointed counsel for petitioner, and his case was assigned for trial May 10, 1950. May 6, 1950, he appeared with his counsel for arraignment and entered a plea of not guilty to the charge. On this occasion, the court asked petitioner and his counsel whether or not his trial could be commenced on May 8th, rather than on May 10th. The reason for this requested change was that the case set for trial before a jury on May 8th had been removed from the calendar, and the court desired to avoid the inconvenience and expense of having the panel of jurors report on a day when no case was ready for trial. After a consultation in the courtroom,

petitioner and his counsel agreed to the trial date of May 8th. The trial was completed on that day and resulted in a verdict of guilty, upon which judgment was entered, and the sentence of life imprisonment in the state penitentiary was imposed, as provided by law, for the offense involved.

It appears from the record before us that petitioner was anxious to have his case tried at the earliest possible date, and expressed that desire. He.then hoped that he and his wife could become reconciled, and he desired to do nothing in defense of the criminal case which would prevent this reconciliation. This idea appears to have been uppermost in his mind, and, consequently, he instructed his counsel not to call certain witnesses then available. When his wife was called as the first witness in the state's case, he caused a successful objection to be interposed, preventing her from testifying. This fact is of importance because it supports respondent's assertion regarding petitioner's attitude and objectives at the time of his trial. Apparently, he was confident that the jury would believe his testimony rather than that offered by the state.

We are convinced that petitioner's actions were taken competently, intelligently, and voluntarily. His counsel acted under his directions, which, on occasion, were against the advice and judgment of the attorney. Regardless of the competency and experience of counsel, his acts were those of petitioner, and, having limited his attorney's actions, he cannot well complain now that those acts were incompetently done.

Upon these facts, we can find no violation of his constitutional rights in either particular which he asserts. In this inquiry, it is immaterial whether or not petitioner is guilty of the offense charged. *Thorne v. Callahan*, 39 Wn. (2d) 43, 48, 234 P. (2d) 517 (1951). That he was mistaken in his prediction of the outcome of his trial, or of his reconciliation with his wife, cannot strengthen his present contention.

Petitioner also mistakenly attempts to rely upon a statute (Code of 1881, chapter 66, § 766, p. 158) providing that "no

person shall be put upon trial on an indictment for a felony until the expiration of five days from the day of his arrest." This contention is beyond the scope of this proceeding, and, in any event, this statute later became § 6926 of Ballinger's Code (Rem. & Bal. Code, § 2132), and was repealed by Laws of 1909, chapter 249, § 52, p. 906.

■ Nor can petitioner now claim successfully that the person against whom it is alleged he committed this offense, is not his daughter. This assertion also fails because it is made too late when raised for the first time in *habeas corpus*, and, in this case, it is not sustained by the facts. Other arguments advanced by petitioner also cannot be considered in this proceeding.

The writ is denied.

MALLERY, SCHWELLENBACH, HILL, DONWORTH, and WEAVER, JJ., concur.

FINLEY, J. (dissenting)—This *habeas corpus* proceeding is instituted by W. H. Buckingham, who was tried and convicted of the crime of incest and was sentenced to a maximum term of *life imprisonment* at the state penitentiary.

Petitioner alleges that he was denied rights guaranteed to him by the Washington and United States constitutions, in that he was rushed to trial without time for his court-appointed counsel adequately to prepare his case. He also asserts that his conviction resulted from perjured testimony of the prosecutrix, his nine-year-old daughter, suborned by Ember Buckingham, who, at the time of the trial, was petitioner's wife. The latter subsequently divorced petitioner and has married again.

Prior to 1947, Rem. Rev. Stat., § 1075, provided, in part:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following:—

"1. Upon any process issued on any final judgment of a court of competent jurisdiction; . . ."

Based upon the foregoing statute, it was the law of this state for a considerable period of time that a petition for a

writ of *habeas corpus* would be denied wherever the judgment under which the petitioner was confined was fair upon its face and disclosed that the trial court had jurisdiction of the person of the petitioner and of the subject matter of the offense charged. *Voigt v. Mahoney,* 10 Wn. (2d) 157, 116 P. (2d) 300; *In re Lucas,* 26 Wn. (2d) 289, 173 P. (2d) 774.

In 1947, the legislature amended subsection 1, quoted above (now Rem. Supp. 1947, § 1075 (1); RCW 7.36.130 (1)), by providing for an exception to the strict rule of the statute and the law of this state:

" . . . where it is alleged in the petition that rights guaranteed the petitioner by the Constitution of the State of Washington or of the United States have been violated."

The strictness of the former rule respecting *habeas corpus* proceedings has been relaxed somewhat in several fairly recent cases. In *In re Mooney v. Cranor,* 38 Wn. (2d) 881, 233 P. (2d) 850, and *In re Harmon v. Cranor,* 41 Wn. (2d) 530, 250 P. (2d) 236, we said that, where a petitioner has alleged that he has been charged with one crime and sentenced for another, we will look beyond the judgment, even though it be regular on its face, and we will examine the information—not to determine its sufficiency, but to ascertain what crime was charged and the propriety of the sentence.

In *In re Gensburg v. Smith,* 35 Wn. (2d) 849, 215 P. (2d) 880, although the writ was denied, we discussed the right to counsel, as guaranteed by (a) the due process clause of the fourteenth amendment to the United States constitution, and (b) Art. I, § 22, of our state constitution as amended by the tenth amendment thereto.

Emphasizing the 1947 amendment, in *Thorne v. Callahan,* 39 Wn. (2d) 43, 234 P. (2d) 517, after a thorough inquiry into the right to counsel, as guaranteed by the fourteenth amendment to the United States constitution, we concluded that the petitioner had been deprived of this right at the time of trial, and granted the petition for *habeas corpus.* However, even under the 1947 amendment (Rem. Supp. 1947, § 1075 (1)) and the cases discussed above, it is not

incumbent upon us in a *habeas corpus* proceeding to decide the question of petitioner's guilt or innocence. As said in *Thorne v. Callahan, supra:*

"It should be borne in mind that it is entirely immaterial to the issues here presented whether or not Thorne is guilty as charged in the information."

In the instant case, petitioner's allegations of perjury and frame-up cannot be considered, at least so far as they relate to the question of his guilt or innocence. But the denial of a defendant's constitutional rights before or during trial is altogether a different matter, for it is elementary that such rights are guaranteed to every accused person, *irrespective of guilt or innocence.*

The facts, as stated in the petitioner's application and supporting affidavits, and as admitted by the return and its supporting affidavits filed by the attorney general, are as follows:

Petitioner was arrested on May 3, 1950, upon an information charging the crime of incest. On May 5, 1950, a Friday, the superior court for Pacific county appointed an attorney as defense counsel for the accused. Petitioner was arraigned but did not plead. At the same time, the court set petitioner's trial for the following Wednesday, May 10th, and arrangements were made for petitioner to enter his plea on the next day, Saturday, May 6th. The defense counsel, appointed by the court, consulted with petitioner before the latter entered a plea of not guilty, on May 6th. After petitioner had pleaded, the court was informed by the prosecuting attorney that a case which had been scheduled for the following Monday would not be ready for trial because of the absence of a witness. In order to keep the jury busy on Monday, the matter of setting the petitioner's trial for Monday was discussed by the trial judge, the prosecuting attorney, and defense counsel. Defense counsel stated it was very short notice, but that he would try the case on the following Monday morning, if he could interview and obtain necessary witnesses and prepare the case, and if his client would consent. Thereupon, *in the court room,* defense

counsel discussed with his client the advisability of advancing the date for trial.

Defense counsel filed affidavits in this *habeas corpus* proceeding, among other things stating: (a) That the petitioner told him the sooner he could get the trial over with, the better he would like it, and that he (petitioner) and defense counsel would be no better prepared at a later date than they would be on the following Monday, May 8th; (b) that petitioner consented to the earlier trial date; and (c) that he (defense counsel) thereupon agreed to try the case on Monday, May 8th; (d) that petitioner insisted that his wife, Ember, not be called to testify; furthermore, (e) that petitioner also specifically requested him (defense counsel) not to call witnesses then available who could prove or help to prove that the charges were being pressed by the wife simply to get the petitioner out of the way; (f) that petitioner did not want the defense of "frame-up" used; (g) that the basis for petitioner's attitude was his hope for a reconciliation with his wife after the trial; (h) that petitioner feared any attempt to show that his wife was framing him would destroy the possibility of a reconciliation.

Defense counsel acquiesced *in toto* with petitioner's desires, as these are outlined above from defense counsel's affidavits. The defense consisted of petitioner's personal denial of guilt and one character witness in his behalf. As mentioned before, petitioner was arrested on Wednesday. His trial commenced on the following Monday morning, was concluded early the same afternoon, whereupon the jury promptly returned a verdict of guilty. Petitioner was sentenced to life imprisonment. Thus, petitioner ran the gamut from freedom to life imprisonment in the period from sometime Wednesday until sometime the following Monday.

As indicated above, petitioner asserts that he has been denied due process rights guaranteed to him by the constitutions of Washington and the United States, (a) in that his trial, at the earlier date, did not allow adequate time for the preparation of his case; and (b) in that his attorney, a recent law school graduate, was inexperienced and unable

to cope with the situation confronting petitioner at the time of the trial.

Art. I, § 22, of our state constitution, in part, provides:

"RIGHTS OF ACCUSED PERSONS.—In criminal prosecutions, the accused shall have the right to appear and defend in person, and by counsel, . . ."

Art. I, § 3, of our state constitution, provides:

"PERSONAL RIGHTS.—No person shall be deprived of life, liberty, or property without due process of law."

The right to counsel, guaranteed by Art. I, §§ 3 and 22, of our constitution, includes the right to have sufficient time for counsel to prepare for trial. In *State v. Hartwig*, 36 Wn. (2d) 598, 219 P. (2d) 564, we said, in granting a new trial:

"When the court recognized the constitutional right of appellant to have counsel and appointed an attorney to represent him, it then became the duty of the court to allow the appointed attorney a reasonable time within which to consult his client and make adequate preparation for trial. The constitutional right to have the assistance of counsel, Art. I, § 22, carries with it a reasonable time for consultation and preparation, and a denial is more than a mere abuse of discretion; it is a denial of due process of law in contravention of Art. I, § 3 of our constitution. [Citing cases.]"

Factually, the *Hartwig* case may be distinguished from the instant case. There, counsel did not consent to the trial date set, but sought a continuance.

*Powell v. Alabama*, 287 U. S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A. L. R. 527, is perhaps the leading authority for the proposition that, under the due process clause of the fourteenth amendment, failure to allow defendant's attorney adequate time for preparation is, in effect, a denial of the right to legal counsel. In the *Powell* case, the United States supreme court said:

"It is not enough to assume that counsel thus precipitated into the case *thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts. No attempt was made to investigate. No opportunity*

*to do so was given. Defendants were immediately hurried to trial. . . .*

"The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob.

"As the court said in *Commonwealth v. O'Keefe*, 298 Pa. 169, 173; 148 Atl. 73:

" '*It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case.*' " (Italics mine.)

In *Bradley v. State; Taylor v. State*, 227 Ind. 131, 84 N. E. (2d) 580, where the facts were somewhat similar to this case, it was said:

"As conclusively shown by the motion for continuance, appellant, Bradley's attorneys had from 4:00 o'clock P. M. Friday, March 19, 1948, to 9:30 o'clock A. M., Monday, March 22, 1948, a period of 65½ hours, in which is included 3 nights and Sunday, to prepare the defense. This time was wholly insufficient for the attorneys to prepare adequately for the defense in the case and the denial of the motion amounted in substance to a denial of the right to counsel as guaranteed by Art. I, § 13, Indiana Constitution. It also amounted to a denial of due process of law as guaranteed by Amendment 14, § 1, of the Constitution of the United States."

In the *Bradley* case, it may be noted again that a continuance was sought by the attorneys involved.

In *People v. Hambleton*, 399 Ill. 388, 78 N. E. (2d) 293, a judgment and sentence were reversed for the reason that counsel did not have adequate time for preparation, even though no continuance was asked. The facts disclosed in the opinion were that the accused was arrested and brought to trial on the same day. Although he had an attorney, the court concluded that, under the circumstances, the "defendant was not given sufficient time in order that it could be said he had a fair trial contemplated by law."

The unique aspect of petitioner's case lies in the failure of his court-appointed counsel to insist upon adequate time to prepare the case, in counsel's actual agreement to the early trial date, and *petitioner's apparent consent* to such procedure. In essence, in a case involving the *possibility of a sentence of life imprisonment,* defense counsel, having only a part of Friday and the Saturday-Sunday week end to investigate and consider the matter, *at his client's request,* agreed to present no defense, save the petitioner's own denial of guilt. In one of his affidavits, executed subsequent to the petitioner's conviction and made a part of the record now before us, defense counsel stated: "I believe that I did the best job possible although had I known then what I know now, I would have conducted it differently."

At the time of the trial, defense counsel had been out of law school less than a year. He had been admitted to the practice of law for a period of less than eight months. He had just been appointed by the trial judge to defend the accused. The court might have been inconvenienced and the county put to some additional jury expense, unless the accused had been tried at the earlier date. Defense counsel's inexperience and the above-mentioned factors may serve to explain his failure to insist upon adequate time to investigate the case, to consider it, and to prepare a defense. On the other hand, *because* of his *inexperience,* he should have insisted upon adequate time for preparation and for deliberate consideration of the possible consequences of the contemplated defense.

The charge of incest *is not a pretty one.* But under our system of jurisprudence, every defendant is presumed to be innocent until he is found guilty and is entitled to due process of law in the full constitutional sense.

It is not my purpose to be harsh or too critical of defense counsel because, considering all of the circumstances involved, the trial court had a responsibility to see that the fundamentals of due process were more realistically observed in the prosecution of the accused. In *Gibbs v. Burke,*

337 U. S. 773, 93 L. Ed. 1686, 69 S. Ct. 1247, the supreme court of the United States said:

"The fair conduct of a trial depends largely on the wisdom and understanding of the trial judge. He knows the essentials of a fair trial. The primary duty falls on him to determine the accused's need of counsel at arraignment and during trial."

The foregoing observations are made with all due deference to the trial court. Unquestionably, as he saw the matter at the time, the court acted sincerely in his supervision of the trial. What happened was merely error in judgment, procedurally, as I personally see the matter. In other words, in a criminal trial, in protecting the rights of an accused, the trial court must give more serious attention to the thought expressed in the case of *Abraham v. State*, 228 Ind. 179, 91 N. E. (2d) 358, where the supreme court of Indiana said:

"The right to be heard by counsel provided by § 13 of Article 1 of the Constitution of Indiana, as well as the due process clause of the Fourteenth Amendment *cannot be nullified by the appointment* of . . . counsel who give merely perfunctory or casual representation. [Citing cases.]" (Italics mine.)

I do not intend to imply by anything said herein that the age or inexperience of defense counsel provides a basis on which convicted criminal offenders should expect to obtain serious consideration from this court in *habeas corpus* proceedings without showing other significant circumstances clearly indicating a deprivation of constitutional due process safeguards.

The question here involved may seem to be a close one. While for this reason I would be somewhat reluctant to grant the requested relief, nevertheless, petitioner has made a convincing showing that justice, or more aptly stated, that the machinery thereof moved too fast, *at least in his case*; and considering the above-quoted provisions of our state constitution, I would prefer to avoid a strong possibility of error on the side of injustice by taking the view that the petitioner was not accorded due process—specifically, his

right to counsel in the full sense guaranteed by our state constitution.

This is a *habeas corpus* proceeding originating in this court. I believe that the judgment and commitment under which the petitioner is now detained in the state penitentiary should be held to be invalid and void for the reasons indicated herein; the petitioner should be remanded to the custody of the sheriff of Pacific county to be dealt with according to law; and, subject to the latter consideration, if further proceedings should not be instituted against the petitioner within a reasonable time, and good cause for not so doing should not be shown by the prosecuting attorney in the superior court for Pacific county, the petitioner should be discharged from custody.

GRADY, C. J., and HAMLEY, J., concur with FINLEY, J.