[No. 38110.    Department Two.    December 15, 1966.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM H. ROBERTS, *Appellant.**

*Harold M. Wilson, Jr.,* for appellant (Appointed counsel for appeal).

*John G. McCutcheon* and *Robert G. Hutchins,* for respondent.

*Reported in 421 P.2d 1014.

922

WEAVER, J.—Defendant appeals from a judgment and sentence entered after a jury found him guilty of the crime of taking indecent liberties with and upon the person of a 10-year-old girl.

We do not find it necessary to set forth the facts. Error is not assigned to the sufficiency of the evidence.

### Trial Counsel—Effectiveness and Competence

Defendant argues that he "was denied effective assistance of counsel contrary to" his constitutional rights. We have recognized that no conviction can stand, no matter how overwhelming the evidence of guilt, if the accused is denied the effective assistance of counsel. See *State v. Cory,* 62 Wn.2d 371, 382 P.2d 1019 (1963).

"Effective assistance of counsel" is an elusive term, difficult, if not impossible, of precise or all-inclusive definition. It must be equated to the facts of each case. An accused indigent is entitled to counsel who has an appropriate sense of professional responsibility for his client's welfare and for the presentation of his defense.

In *State v. Keller,* 65 Wn.2d 907, 400 P.2d 370 (1965), this court said:

> We note, with increasing concern, that it seems to be standard procedure for the accused to quarrel with court-appointed counsel, or to develop an undertone of studied antagonism and claimed distrust, or to be reluctant to aid or cooperate in preparation of a defense. This appears to be done in order to argue on appeal that the accused was deprived of due process alleging he was represented by incompetent counsel.

It appears from the record that at the time trial counsel was first appointed, defendant asked to be appointed *co-counsel* with his court-appointed lawyer. Thus, a foundation was laid.

When sentence was imposed defendant moved the dismissal of his trial counsel (who had already prepared a notice of appeal) because of alleged disagreement between them. His request for new counsel on appeal was granted.

One section of defendant's appellate brief is, for the most part, an attack upon the capability and competence of de-

fense counsel. The record does not support some of the allegations; others may be classified as differences of opinion regarding trial strategy. The method and manner of presenting a case to a jury will vary with different counsel.

The effectiveness of representation or the competence of counsel is not measured by acquittal or conviction. The test is: does the record, as a whole, show that the accused was accorded a fair and impartial trial? *State v. Lei,* 59 Wn.2d 1, 365 P.2d 609 (1961), and cases cited.

The record before us meets this test.

### Constitutionality of RCW 9.79.080 and Validity of Jury Instruction

Defendant was charged under RCW 9.79.080:

RCW 9.79.080 Indecent liberties, exposure, etc. (1) Every person who takes any indecent liberties with, or on the person of any female of chaste character, without her consent, shall be guilty of a gross misdemeanor;

(2) Every person who takes any indecent liberties with or on the person of any child under the age of 15 years, or makes any indecent or obscene exposure of his person, or of the person of another, whether with or without his or her consent, shall be guilty of a felony, and shall be punished by imprisonment in the state penitentiary for not more than twenty years, or by imprisonment in the county jail for not more than one year. [1955 c 127 § 1; 1909 c 249 § 190; 1937 c 74 § 2; RRS § 2442.]

The jury was instructed:

The term "indecent liberties" is incapable of a precise legal definition. However, for the purpose of this case you are instructed that an indecent liberty is a privilege or license taken in violation of the laws of propriety, and is such an act or acts as the common sense of society would regard as indecent and improper, and offensive to modesty and decency.

By appropriate assignments of error, defendant urges that RCW 9.79.080(2), *supra,* is unconstitutionally vague and indefinite, contrary to the due process clause of the fourteenth amendment to the federal constitution. As a corollary, he argues that the quoted instruction is subject to the same attack. We do not agree.

It is true that the terms of a statute must be sufficiently explicit to inform those subject to it what conduct will render them liable to its penalties. There must be a standard to determine whether specific acts constitute a crime under the statute.

In *Dekelt v. People,* 44 Colo. 525, 99 Pac. 330 (1908), the court said of a statute similar to ours:

> *Indecent means "unfit to be seen* * * * *offensive to modesty and delicacy."* Its synonyms are shameful; impure; obscene. One definition of liberties is privileges or licenses taken in violation of the laws of propriety.— Webster.
>
> So, it is apparent, when we take into consideration that the purpose of the act was to protect the morals of the child, that the legislature employed apt words to describe the offense, because it is evident that the acts constituting the offense means [*sic*] such as the common sense of society would regard as indecent and improper. . . . True, what shall be regarded as "immodest, immoral and indecent liberties" is not specified with particularity, but that is not necessary. *The indelicacy of the subject forbids it. The common sense of the community, as well as the sense of decency, propriety and morality which people generally entertain is sufficient to apply the statute to each particular case, and point out unmistakably what particular conduct is rendered criminal by it.* (Italics ours.)

This court has, on numerous occasions, considered the efficacy of the statute and the sufficiency of the questioned instruction.

Our recent decision in *State v. Leohner, ante* p. 131, 417 P.2d 368 (1966), is dispositive of defendant's contentions. The court said:

> An instruction identical to the one here objected to was approved by this court in *State v. Stuhr,* 1 Wn.2d 521, 96 P.2d 479 (1939). We there said that the term "indecent liberties" was self-defining, needing no amplification. To reasonable men it can have only one meaning.
>
> > Anyone of the most ordinary intelligence, who is familiar with merely the rudiments of the English language, understands what is meant when one is charged with having taken indecent liberties with the person

of a child. *State v. Moss,* 6 Wn.2d 629, 632, 108 P.2d 633 (1940).

We conclude that the statute is not unconstitutional because of vagueness, nor is the instruction erroneous. Other decisions of this court dealing with the same statute are set forth in the margin.[1]

## Handcuffed on Way to Court

We find no merit in defendant's assignment of error to the court's denial of two motions for a mistrial based upon counsel's statement that "defendant was . . . you might almost say 'paraded' in front of the jury in manacles . . . ."

The record shows that defendant was manacled when escorted through a corridor from the jail to the courtroom. A door to the jury room allegedly was open. There is nothing to establish that any juror saw him. He was not "paraded."

No claim is made that defendant was manacled while in the courtroom or that the conduct of his defense was impaired. There is no indication that the criticized procedure was prejudicial.

Our conclusion is supported by the rationale of *State v. Boggs,* 57 Wn.2d 484, 358 P.2d 124 (1961); *State v. Sawyer,* 60 Wn.2d 83, 371 P.2d 932 (1962); and *Way v. United States,* 285 F.2d 253 (10th Cir. 1960).

## Association of Juror and Witness

■ Defendant maintains that his basic guarantee of a fair jury trial was undermined by the association of a juror and a witness for the prosecution who allegedly engaged in a conversation in the courthouse corridor during a trial recess. Although the witness is identified, the juror is not.

This claim is made in an affidavit filed by defendant's

---

[1]*State v. Fischer,* 57 Wn.2d 262, 356 P.2d 983 (1960); *State v. Winger,* 41 Wn.2d 229, 248 P.2d 555 (1952); *State v. Fairbanks,* 25 Wn.2d 686, 171 P.2d 845 (1946); *State v. Kosanke,* 23 Wn.2d 211, 160 P.2d 541 (1945); *State v. Huey,* 14 Wn.2d 387, 128 P.2d 314 (1942).

wife on December 10, 1965—more than 9 months after entry of judgment and sentence and notice of appeal.

We cannot consider the affidavit.

### Speedy and Exact Justice

Finally, defendant maintains that he "was denied speedy and exact justice contrary to Article 1 Section 10 of the Constitution of the State of Washington," which reads:

> Justice in all cases shall be administered openly, and without unnecessary delay.

The acts with which defendant is charged allegedly occurred October 26, 1964. Defendant was arrested the next day at 2 p.m. by a detective of the *city* police department. November 19, 1964, an information was filed in the superior court. Trial counsel was appointed November 20, 1964. January 13, 1965, the case was tried.

Based upon the fact that defendant was incarcerated from October 27 until November 20, 1964, when counsel was appointed for him, he asserts that his constitutional rights were so violated that his conviction must be reversed and the charges dismissed.

In the abstract, defendant's contention could have merit, but what happened during the 24 days between arrest and appointment of counsel?

Ordinarily, we could not determine this from the usual appellate record, but, for some reason not apparent to this court, defendant had the clerk of the superior court certify to us in transcript a photostatic copy (or reproduction by some other method) of his handwritten application for a writ of habeas corpus filed in the superior court April 29, 1965. It was, of course, filed after his conviction, but pending appeal.

The handwriting is not good and the reproduction of the document does not improve its legibility. Insofar as we are able to translate it, defendant's petition alleges:

> A. Petitioner was incarated [*sic*] in the Tacoma City Jail on a charge [of] being a misdemeanor, on October 27th 1964, case #93- as a *"disorderly Person"*- [underlining defendant's] upon going into the matter Judge

De Witt Rowland[2] thereupon disqualified himself and transferred the cause to Judge Oswald Stone's (J.P.) Court; A hearing was set for November 20th 1964 at 9:30 A.M. in said Court.

B. Petitioner was Then on said *"20th day of November 1964"* [underlining by defendant] taken before the Honorable Elizabeth Shackleford at which time he made no plea *whatsoever,* and did then and there *emphatically* [underlining by defendant] request that he be given a *"preliminary hearing"* [quotes and underlining by defendant] which the court set for November 27th 1964 ((the first charge having been raised to a felony basis));[3]

C. On November 27th petitioner appeared before This Honorable Court, Judge B. Johnson Presiding, [This is an obvious error. The record shows he appeared November 20] ((petitioner not yet having entered a plea)) at which time the Court appointed counsel Norbert F. Knecht, over petitioner's protest that he desired an attorney to be appointed as Co-counsel with petitioner that he might better protect his cause at Bar . . . .

Defendant further alleges that his requests for a preliminary hearing and for indictment by a grand jury were denied by the superior court.

It is apparent from the record that defendant was originally arrested and detained pursuant to charges filed in the municipal and justice courts.

RCW 10.37.020 provides:

Indictment or information—time for filing. Whenever a person has been held to answer to any criminal charge, if an indictment be not found or information filed against him *within thirty days,* the court shall order the prosecution to be dismissed; unless good cause to the contrary be shown. (Italics ours.)

Assuming that defendant had been held to answer to a criminal charge in municipal court on October 27, 1964, the

---

[2]In a subsequent petition for writ of habeas corpus filed by court-appointed appellate counsel October 27, 1965, the charge is identified as being filed in Municipal Court of Tacoma.

[3]In his October 27, 1965 petition for writ of habeas corpus petitioner alleges that his request for subpoenas for witnesses was granted.

day he was arrested, the state filed its information in superior court November 19, 1964, 23 days later, within the time set by statute.

There is nothing to indicate that during his detention he was abused, refused the right to communicate with others, requested counsel, refused counsel, made a confession, lost witnesses, or was prejudiced in any way in the preparation of his defense. The state did not gain nor did the defendant lose any evidence during his detention prior to appointment of counsel.

The record supports our conclusion that defendant's constitutional rights were not violated in the instant case.

The judgment is affirmed.

ROSELLINI, C. J., FINLEY and HAMILTON, JJ., and BIRDSEYE, J. Pro Tem., concur.