[No. 425-40978-1.    Division One—Panel 2.    July 13, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. HUDSON HUM-BURGS, *Appellant.*

32

*Stanley B. Allper,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *Robert S. Bryan, Deputy,* for respondent.

HOROWITZ, A. C. J.—Defendant Humburgs was convicted of the crime of abduction. RCW 9.79.050(1) makes it a felony to "take a female under the age of eighteen years for the purpose of prostitution or sexual intercourse, . . ." Defendant appeals.

The jury could have found the following as the facts of the case.

Judy, age 16, and Carlene, a girl friend, were each runaways from home. They temporarily lived together in a vacant house in the central area of Seattle. In the late afternoon of October 6, 1968, the two girls went to a neighborhood store for candy and were accosted by the defendant Humburgs and the codefendant Byrd. The defendants at the time were drinking a bottle of wine and asked the girls to come with them "to be their girls." They refused and walked on, but the defendants kept following them. The defendant Byrd then asked Judy to kiss him and when she refused he "jumped" her. When she managed to free herself, she was "jumped" by defendant Humburgs. Again she freed herself and ran four to six blocks, but Humburgs caught up with her. Defendant Byrd then came up and "jumped" her. Humburgs sat her down and forced her to drink some wine that he and Byrd were sharing. Humburgs and Byrd then flagged down a passing automobile, Humburgs pulling Judy into the car and Byrd pushing her in. They then drove by car to Humburgs' apartment at 30th and Spruce in Seattle, then occupied by one Bernice Gosby and her children. Upon their arrival Byrd took Judy into a bedroom where by use of threats and physical abuse he forced her to remove her clothes and submit to sexual intercourse. Humburgs was not in the bedroom, but he was

in another room in the apartment. About 2 hours later, Humburgs went into the bedroom and told Byrd and Judy to get something to eat and then left the room. Byrd and Judy left the bedroom about one-half hour later.

The next morning Judy told Byrd she wanted to go home. Byrd told her to go, but Humburgs would not permit her to leave. Byrd left the apartment and Humburgs then forced Judy to have sexual intercourse with him. The rest of the day Judy was required to spend caring for the children of Bernice Gosby and to also do general household chores in the apartment. That evening Humburgs took Judy to the home of another girl where she was cleaned up, fed and instructed in the practice of prostitution. Humburgs told Judy that she "was going to be his woman and work for him." Judy was again forced to have sexual intercourse with the defendant and to practice prostitution for the rest of the week under the watch of Humburgs or Bernice Gosby until she managed to escape by taxi to her parents' home on October 12, the Saturday evening following. Meanwhile Judy had managed to get information of her dilemma to her boyfriend Roger. Roger tried unsuccessfully to get Judy away from Humburgs. The latter had warned Roger that he would "wind up in the lake" if he didn't quit looking for Judy and that he would probably never see her again because she was his "living." The codefendant Byrd pled guilty to the abduction charge. Defendant Humburgs was thereafter tried, offered no evidence in his behalf, and was found guilty of the crime charged. His motion for new trial was denied and judgment and sentence entered against him. Defendant's assignments of error raise four categories of claimed errors.

Defendant first contends that there was insufficient evidence on which to instruct the jury to the effect that the state must prove beyond a reasonable doubt that the defendants "wilfully, unlawfully and feloniously took one Judy . . . for the purpose of prostitution or sexual intercourse." We disagree. The evidence showed that when Judy endeavored to run away, she was caught, grabbed

and forced into a car by both defendants. It is true that under the statute, taking alone unless accompanied by the prohibited purpose is insufficient. The taking must be "for the purpose of prostitution or sexual intercourse . . ." The evidence of subsequent intercourse and prostitution was relevant to the issue of the intention accompanying the taking under the rule that a defendant's subsequent conduct of closely related events is admissible circumstantial evidence to prove the existence or absence of intent, motive or purpose with which an act is done. *See* 29 Am. Jur. 2d *Evidence* §§ 278, 366 (1967); 3 H. Underhill, Criminal Evidence § 675 (5th ed. 1957); 2 J. Wigmore, Evidence §§ 302, 304 (3d ed. 1940); *State v. Dooley,* 133 Wash. 392, 233 P. 646 (1925). Admissibility is not affected by the fact that evidence of subsequent conduct may prove other crimes. *State v. Ingels,* 4 Wn.2d 676, 104 P.2d 944 (1940); *State v. Vogel,* 183 Wash. 664, 49 P.2d 473 (1935); *State v. Schultz,* 168 Wash. 120, 10 P.2d 980 (1932). Although Humburgs was not physically present in the bedroom with Byrd and Judy, he was constructively present as Byrd's aider and abettor. *See* R. Perkins, Criminal Law 572 (1957); 1 H. Underhill, Criminal Evidence § 179 (5th ed. 1956). The fact that the defendant was tried separately and that no conspiracy was charged does not render evidence of Byrd's conduct inadmissible. *See State v. Williams,* 62 Wash. 286, 113 P. 780 (1911); *State v. Pettit,* 74 Wash. 510, 133 P. 1014 (1913). Furthermore, when two defendants are jointly charged as principals, proof that one acted as aider or abettor will sustain the charge and conviction of both as principals. RCW 9.01.030; *State v. Redden,* 71 Wn.2d 147, 150, 426 P.2d 854 (1967); *State v. McCaskey,* 55 Wn.2d 329, 347 P.2d 895 (1959). The jury could have found that the defendant Humburgs aided or abetted Byrd or was aided or abetted by him to overcome the will of Judy to submit to sexual intercourse or to act as a prostitute. *See State v. Austin,* 65 Wn.2d 916, 400 P.2d 603 (1965); 2 F. Wharton, Criminal Evidence, §§ 416, 421 (12th ed. 1955). It is apparent from the statement of the case that Humburgs and Byrd had

together participated in the abduction of Judy to Humburgs' apartment and that Humburgs neither objected nor intervened in the conduct that followed. Humburgs' entire conduct is consistent with his intention that she remain abducted for the purposes prohibited by statute. Defendant's conduct in the apartment is clearly relevant to the issue of his purpose accompanying the prior and continuing taking.

■ Defendant contends that it was error for the trial court on the one hand to instruct the jury that Byrd's action in the bedroom of the apartment was not to be considered as evidence against the defendant and at the same time allow such evidence to be given. In view of what we have said, the court's instructions were more favorable to the defendant Humburgs than those to which he was entitled. If the evidence was properly admitted, it remains properly admitted even if our reason for affirming the ruling on admissibility is inconsistent with another ruling or instruction of the trial court not before us for review. *State v. Berkins*, 2 Wn. App. 910, 471 P.2d 131 (1970); *Grange Ins. Ass'n v. Eschback*, 1 Wn. App. 230, 236, 460 P.2d 690 (1969).

■ Defendant next contends that the evidence shows beyond a reasonable doubt that Judy voluntarily accompanied Humburgs and Byrd to the Humburgs' apartment and voluntarily engaged in sexual intercourse and prostitution. Accordingly, he contends that the court erred in refusing to give defendant's proposed instructions to the effect that if Judy voluntarily accompanied the defendant or voluntarily participated in acts of sexual intercourse or prostitution that the defendant was not guilty. We find no error. The court was not required to give instructions in the form proposed by the defendant even if otherwise proper, if the instructions actually given by the court adequately covered the subject. *State v. Holbrook*, 66 Wn.2d 278, 401 P.2d 971 (1965). The court in its "to convict" instruction required the state to prove beyond a reasonable doubt that the defendants "wilfully, unlawfully and feloniously took one

36

Judy . . ." for the prohibited purpose. The court also instructed the jury that "you are instructed that if you believe that Judy . . . voluntarily and freely accompanied the defendants without persuasion, enticement or force on the part of the defendants, then your verdict will be not guilty." The provisions concerning persuasion and enticement were properly included. *State v. Richards,* 88 Wash. 160, 152 P. 720 (1915). Furthermore, the crime charged was committed when the taking occurred for the prohibited purposes. It is not a defense to the crime charged that subsequent sexual intercourse or prostitution was voluntary on the part of the person abducted nor would it have been a defense even if the purpose of the taking had been unfulfilled. *People v. DeMarcello,* 31 N.Y.S. 2d 608 (Kings Ct. 1941); *see State v. Dearinger,* 72 Wn.2d 938, 435 P.2d 677 (1967).

■ Finally defendant contends that defendant was denied his constitutional right to competent legal counsel in the trial below. Defendant's claims in this respect are set forth in a letter to his appeal counsel to the effect that he was not notified concerning the trial date, had no opportunity to prepare for trial by interviewing and subpoenaing witnesses, and that he was not given an opportunity to determine for himself whether to take the stand and testify. There is no complaint concerning the quality of the legal representation in the actual trial itself. Indeed, court appointed counsel on appeal is complimentary of appointed trial counsel's skill with which he conducted the defense. The contentions now made would require us to make a determination of the truth of defendant's ex parte post trial claims concerning matters occurring out of court. For all we know, an evidentiary hearing would disclose that the defendant's present statements are controverted and that the decisions made concerning trial management were tactical decisions of trial counsel in discharge of his duty to best represent the defendant. *State v. Thomas,* 71 Wn.2d 470, 429 P.2d 231 (1967); *State v. Roberts,* 69 Wn.2d 921, 421 P.2d 1014 (1966). If there be a basis for the claims now

made in an effort to show that, after considering the entire record, the accused was denied a fair and impartial trial (*State v. Thomas, supra*), that basis must be established in a separate proceeding, the merits of which we do not prejudge. *See Buckingham v. Cranor*, 45 Wn.2d 116, 273 P.2d 494 (1954). On the record of the trial below on which we rely, there is no basis for the claim. *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968); *cf. State v. Kolocotronis*, 73 Wn.2d 92, 107, 436 P.2d 774 (1968).

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.