[No. 323-1.     Division One—Panel 1.     July 12, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. CLINTON WHITE, *Appellant.*

284

*Howard T. Manion* (appointed counsel for appeal), *Miller, Howell & Watson,* and *John M. Watson,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *John E. Oswald, Deputy,* for respondent.

UTTER, J.—Clinton White, the appellant, and a codefendant were charged with four counts of bribery. Each of these counts related to alleged offers to give compensation to members of the Seattle Police Department with the intent the offer and compensation would influence the officers to refrain from harassing the house White lived in where prostitution activities were taking place.

White was convicted on each of the four counts and his codefendant, Edward Kendrick, was convicted on counts three and four. At trial, White was represented by retained counsel, who filed a notice of appeal and was then appointed by the court to handle the appeal. After the brief was filed by his first counsel, White expressed dissatisfaction with it and obtained funds to retain his present counsel on appeal. He now requests a new trial based upon claimed ineffective assistance of retained counsel.

White's testimony at trial did not dispute payment of money to the officers or that he lived in the home. He indicated he first met the officers when he saw them peeking through a front window, and it was the officers who directed him to tell the girls, if they were working, to leave something for the officers. White stated, "Well, the only thing I know to do is what a person tells me. He told me to get the money from the girls. He told me to ask them, and I did just like he told me to."

The apparent thrust of White's defense was that he par-

ticipated in making the payments, but only at the insistence of the officers and did not intend to influence their action. We are unable to ascertain precisely what his theory was, inasmuch as the trial record before us does not contain the final argument of counsel. The jury was instructed in the language of the statute regarding the necessity for White to possess an unlawful intent. His retained counsel, however, failed to request an instruction on the defense of entrapment, and this is the present basis for the claimed ineffective assistance of counsel and request for a new trial.

The defense of entrapment is available where the accused is lured or induced by an officer to commit a crime he had no intention of committing. *Seattle v. Evans,* 75 Wn.2d 225, 228, 450 P.2d 176 (1969); *Seattle v. Muldrew,* 71 Wn.2d 903, 431 P.2d 589 (1967). If officers request or suggest payment of a bribe from an accused to influence their action, and the accused, having no criminal intention to participate in the bribe prior to the request, acquiesces to the request, he may raise the defense of entrapment to a subsequent charge of bribery. This defense, if believed by the trier of the fact, is fatal to the prosecution. *United States ex rel. Hassel v. Mathues,* 22 F.2d 979 (E.D. Pa. 1927); Annot., 69 A.L.R.2d 1397, 1417 (1960). Where these facts exist, it has been held error to fail to give a substantially accurate instruction upon entrapment. *Capuano v. United States,* 9 F.2d 41 (1st Cir. 1925); *Ossen v. Commonwealth,* 187 Va. 902, 48 S.E.2d 204 (1948).

The effective assistance of counsel is a constitutionally protected right. It is assured federal prosecution by the Sixth Amendment and state prosecution by judicial interpretation of the Fourteenth Amendment. *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A.L.R. 527 (1932).

We believe the fact that counsel in this case was retained rather than appointed to be of no significance on the question involved in this case.

Many courts deny relief where counsel is retained on the

basis of both an agency theory (*Hendrickson v. Overlade,* 131 F. Supp. 561 (N.D. Ind. 1955)), and the apparent absence of the "state action" required by the Fourteenth Amendment, which is provided when there is court appointment of counsel. *Opie v. Meacham,* 293 F. Supp. 647 (D. Wyo. 1968); *Weatherman v. Peyton,* 287 F. Supp. 819 (W.D. Va. 1968); Annot., 74 A.L.R.2d 1390, 1406-08 (1960). These arguments have been properly criticized by Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases,* 59 Nw. U.L. Rev. 289 (1964), where he notes:

> The agency rationale whereby the conduct of retained counsel is imputed to an accused constitutes a concept gone astray: . . . The logical-moral underpinnings of a principal's liability to an innocent third party for the acts of the principal's agent vanish when the agency concept is super-imposed on the attorney-client relationship in criminal cases; there is no innocent beneficiary of the accused's agency-born liability for the ineptitude of his retained attorney-agent. Moreover, . . . the principal-agent relationship presupposes a principal sufficiently informed to direct and supervise his agent.
>
> . . .
>
> . . . [I]t assuredly is not possible to avoid the unmistakable onset of state action . . . when, through its judicial machinery, the state convicts an accused and passes sentence upon him on the basis of a trial so miserably conducted by retained defense counsel as to fall below the due process line. Here, graphically speaking, there may be as much as 2,300 volts of state action.

Our state has held the fact that counsel is retained rather than appointed has no bearing upon the constitutional right to effective assistance of counsel. *State v. Robinson,* 75 Wn.2d 230, 234, 450 P.2d 180 (1969). *See also Blanchard v. Brewer,* 429 F.2d 89 (8th Cir. 1970); *United States ex rel. Maselli v. Reincke,* 383 F.2d 129 (2d Cir. 1967); *State v. Woolbright,* 449 S.W.2d 602 (Mo. 1970); and *Shipman v. Gladden,* 253 Ore. 192, 453 P.2d 921 (1969).

Definitions of "effective assistance of counsel" have been attempted many times. At one time, our state defined the

phrase as "incompetence . . . [which reduces] the trial to a farce . . ." *State v. Mode,* 57 Wn.2d 829, 833, 360 P.2d 159 (1961). The currently accepted definition is, on its face, a more liberal one and directs us to inquire if the accused was accorded a "fair and impartial trial." *State v. Robinson, supra* at 233, quoting *State v. Thomas,* 71 Wn.2d 470, 429 P.2d 231 (1967).

The "fairness" test was first enunciated in *Powell v. Alabama, supra,* and its content was later expanded in *Adams v. United States ex rel. McCann,* 317 U.S. 269, 87 L. Ed. 268, 63 S. Ct. 236, 143 A.L.R. 435 (1942), where the court stated, "Essential fairness is lacking if an accused cannot put his case effectively in court." The determination of what is "fair" imposes on the appellate court the burden of attempting to do justice on a case-by-case basis by application of an imprecise standard. This is perhaps necessary as it has been recognized that:

> No test more specific than that embodied in the concept of fair trial can appropriately be employed in determining whether post-conviction relief should follow a defense effort the claimed inadequacy of which stemmed from counsel's intrinsic shortcomings.[1]

The difficulty in giving meaning to the concept of a "fair trial," where representation is claimed to be inadequate, stems from the impossibility of defining professional ineffectiveness in absolute terms. This difficulty is compounded by a presumed competence of members of the bar to act for the defense in a criminal case. *Michel v. Louisiana,* 350 U.S. 91, 100 L. Ed. 83, 76 S. Ct. 158 (1955); *Riley v. Rhay,* 76 Wn.2d 32, 34, 454 P.2d 820 (1969); *State v. Forbes,* 74 Wn.2d 420, 445 P.2d 204 (1968); and *State v. Piche,* 71 Wn.2d 583, 430 P.2d 522 (1967).

The practice of law is an art, not a science, and a measurement of professional competence cannot be gauged by an absolute standard, due to the wide latitude that must be allowed counsel in conducting a trial. *Henderson v.*

---

[1] Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases,* 59 Nw. U.L. Rev. 290, 341 (1964).

*Cardwell,* 426 F.2d 150, 153 (6th Cir. 1970); *Commonwealth v. Dascalakis,* 246 Mass. 12, 26-27, 140 N.E. 470, 476 (1923); *State v. Dangelo,* 182 Iowa 1253, 1257, 166 N.W. 587, 589 (1918). In addition, it has been recognized that an attorney cannot be said to be ineffective if he does not possess the highest degree of skill. *United States ex rel. Mitchell v. Thompson,* 56 F. Supp. 683, 688 (S.D.N.Y. 1944); *State v. Brazell,* 15 Ohio App. 2d 104, 239 N.E.2d 125 (1968).

■ The specific claim of ineffectiveness of counsel in this case is directed to the failure to assert a particular theory of defense. The choice of the theory of defense is a tactical decision and discretion must be accorded to trial counsel. *United States v. Sobell,* 142 F. Supp. 515 (S.D.N.Y. 1956), *aff'd,* 244 F.2d 520 (2d Cir. 1957); *State v. Kruchten,* 101 Ariz. 186, 417 P.2d 510 (1966); *People v. Martin,* 210 Mich. 139, 177 N.W. 193 (1920). It has been noted in this regard that:

> Trial lawyers, whether employing hindsight or while in the process of kibitzing, are notoriously capable of disputing lengthily and without hope of consensus as to the propriety of the defensive tack taken by the lawyer charged with actual responsibility for the conduct of a criminal defense. Consequently, courts are reluctant to second-guess counsel in their decisions respecting defensive strategy. Especially is this so where an abandoned defense was the seemingly bizarre and unsupportable concoction of the accused. Counsel is not required to press a suggested defense which he, intelligently and in good faith, does not consider warranted by the demonstrable facts; he cannot be expected to work miracles with a preposterous defense story.

(Footnotes omitted.) 59 Nw. U.L. Rev., *supra* at 314.

The manner and method of preparing and presenting a case will vary with different counsel. Effectiveness or the competence of counsel cannot be measured by the result obtained. Some defendants are, in fact, guilty and no amount of forensic skill is going to bring about an acquittal. *State v. Thomas,* 71 Wn.2d 470, 472, 429 P.2d 231 (1967).

■ We believe, in examining the acceptable boundaries

of the exercise of judgment by counsel, the same standard should be used as is used in measuring trial court discretion, and we should say counsel has acted in a constitutionally unacceptable manner in his choice of trial tactics only if the court could say no reasonable lawyer would have so acted. *Aetna State Bank v. Altheimer,* 430 F.2d 750, 757 (7th Cir. 1970); *Delno v. Market St. Ry.,* 124 F.2d 965, 967 (9th Cir. 1942); *Rehak v. Rehak,* 1 Wn. App. 963, 965, 465 P.2d 687 (1970).

Support exists for granting a new trial, however, where ignorance of the law or inadequate pretrial investigation rather than deliberate choice as taken by counsel has resulted in the failure to present an apparently available theory of defense. *Brubaker v. Dickson,* 310 F.2d 30 (9th Cir. 1962), *cert. denied,* 372 U.S. 978, 10 L. Ed. 2d 143, 83 S. Ct. 1110 (1963); *In re Saunders,* 2 Cal. 3d 1033, 472 P.2d 921, 926-27, 88 Cal. Rptr. 633 (1970); *People v. McDowell,* 69 Cal. 2d 737, 447 P.2d 97, 73 Cal. Rptr. 1 (1968); and *People v. Ibarra,* 60 Cal. 2d 460, 386 P.2d 487, 490-91, 34 Cal. Rptr. 863 (1963).

For a defendant, then, to successfully claim he was denied a fair trial by lack of effective assistance of counsel, he must establish: (1) That if submission of the defense was a question of deliberate tactical choice or judgment, no reasonable lawyer would have acted as his counsel did or that failure to submit his defense was the result of ignorance or inadequate pretrial investigation and, (2) that substantial prejudice resulted therefrom which probably would have changed the result of the trial.[2]

The imposition of artificial rules and vague concepts of "fairness" by courts at the appellate level is an inadequate method to control the problems raised by claims of an unfair trial caused by ineffectiveness of retained or appointed counsel. Assurance of fairness in the first instance

[2]*Kramer v. Sheehy,* 316 U.S. 646, 86 L. Ed. 1730, 62 S. Ct. 1283 (1942); *State v. Queen,* 73 Wn.2d 706, 711, 440 P.2d 461 (1968); *Schmittler v. State,* 228 Ind. 450, 93 N.E.2d 184, 191 (1950); and *Ex parte Kramer,* 61 Nev. 174, 208, 122 P.2d 862, 876-77 (1942).

and relief of the appellate judiciary from claims of incompetence of counsel in most cases where the defendant is convicted, can be achieved only by the adoption of procedural safeguards by the trial courts.[3]

White's claim of ineffective assistance is raised by appeal. The orthodox approach to the determination of this question would be to rule that he is bound by the trial level record and his claim must be found within its four corners. *People v. Gardiner*, 303 Ill. 204, 135 N.E. 422 (1922).

The determination of the appropriate forum in the judicial process to dispose of the claim of ineffective assistance is a difficult one. In the usual case, the factors that are critical to the determination of the question of effective representation, such as questions of trial strategy, failure to call certain witnesses, or failure to make objections and save exceptions, are dependent on either conversations between the attorney and client occurring out of court, or factors of judgment on the part of the attorney that, of necessity, would not appear in the trial record.

The trial record in the usual case would, by its nature, be an inappropriate vehicle to present the claim and separate proceedings, by virtue of writ of a habeas corpus, heard before the trial court, would be the only effective process. *Buckingham v. Cranor*, 45 Wn.2d 116, 273 P.2d 494 (1954); *State v. Humburgs*, 3 Wn. App. 31, 36, 472 P.2d 416 (1970).

Courts have, on occasion, however, considered claims of

---

[3]Some safeguards that have been suggested in Grano, *The Right to Counsel: Collateral Issues Affecting Due Process*, 54 Minn. L. Rev. 1175 (1970) are: (1) The trial attorney should file a confidential work sheet with the trial judge indicating the extent and nature of his preparation in all cases involving guilty pleas. (2) If a significant number of incidents are being waived, the trial judge should assure himself that the defendant understandingly acquiesces; if there is disagreement, counsel should have the burden of illustrating a reasonable tactical objective for such waiver. (3) At the conclusion of the testimony, the trial judge should determine if disagreement exists over calling witnesses, defendant's testifying and other matters. Defendant should be warned that a negative answer is forever binding. On all but the decision to testify, defendant would have the burden of convincing the trial judge he should prevail.

ineffective assistance at the appellate level when all the factors necessary for the decision were apparently present. In *People v. Gardiner, supra,* the court held assistance of counsel was ineffective. In *State v. Robinson,* 75 Wn.2d 230, 234, 450 P.2d 180 (1969); *State v. Kolocotronis,* 73 Wn.2d 92, 107, 436 P.2d 774 (1968); *State v. Shelton,* 71 Wn.2d 838, 840, 431 P.2d 201 (1967); and *State v. Piche,* 71 Wn.2d 583, 430 P.2d 522 (1967), the court concluded on the basis of the appellate record that the efforts of counsel for the defendant resulted in his receiving a fair trial.

We could merely affirm the trial court at this time and leave the entire question of the claim of ineffective assistance of counsel to be resolved at a subsequent habeas corpus hearing, as we did in *Humburgs.* This, in turn, would leave White free to appeal certain questions from that hearing which we believe can be resolved now on the basis of the appellate record now before us, obviating the necessity of a second appeal. Any other approach would be wasteful of judicial manpower in this case.

The record does not reveal whether there was a basis for the actions of retained counsel at the trial level in failing to advance the defense of entrapment. Counsel who represented White appeared, from the trial record, to be rendering effective assistance to White in other areas of his defense. Reasons for failure to advance the defense of entrapment can only be ascertained in a factual hearing, and we therefore remand the case to the superior court for that purpose. Defendant will there have the burden of establishing that there was no reasonable basis for the failure of counsel to submit the defense of entrapment. If no such reasonable basis is found by the trial court, however, we are able, in this appeal, to ascertain from the record that failure to submit the defense of entrapment, as the only apparent defense available, probably affected the outcome of the trial, as it went to the heart of the case, and would order a new trial for White.

We believe the trial court judge who heard the testimony of the witnesses and observed the conduct of counsel would

be in the best position to determine, as a matter of fact, whether there was a reasonable basis for the failure of counsel to submit the defense of entrapment. If a reasonable basis for counsel's action is found to exist, the judgment will be affirmed.

HOROWITZ, C.J., concurs.

WILLIAMS, J. (dissenting)—Appellant claims he is entitled to a new trial because his trial counsel was incompetent in not advancing the defense theory of entrapment. Heretofore, the question of lawyer incompetence has been considered either by a review of the entire record on appeal, *State v. Robinson,* 75 Wn.2d 230, 450 P.2d 180 (1969); *State v. Piche,* 71 Wn.2d 583, 430 P.2d 522 (1967), or in a habeas corpus proceeding. *Buckingham v. Cranor,* 45 Wn.2d 116, 273 P.2d 494 (1954). *See State v. Humburgs,* 3 Wn. App. 31, 472 P.2d 416 (1970). In the present case, the entire record cannot be reviewed because the argument of counsel, which might very well show his brilliance rather than incompetence, is missing. Habeas corpus, of course, is an original proceeding not available to appellant within the framework of this appeal.

The majority proposes that the claim of appellant, made for the first time on appeal, that his counsel erred in not pressing a particular defense, is to be resolved by the trial court at a factual hearing called for that purpose. There is a strong presumption that counsel was competent, *State v. Piche, supra;* and, I am sure, an even stronger presumption that the trial court was not only competent, but did its very best to insure appellant a fair trial. It seems to me that it is inappropriate now to ask the same judge to hear testimony and rule upon the performance of counsel as well as upon his own conduct of the trial.

Moreover, the implications of such a procedure are ominous. In every criminal appeal in which the appellant advances the claim of ineffective counsel for whatever reason, the case will be sent back for a factual hearing unless disposition of the claim can be resolved from the record.

Thus, one more device will be added to the already formidable number currently employed to postpone the day of final determination of a criminal cause. I have been unable to find a precedent for remand of the case for a similar reason in this state or in any other jurisdiction, nor has any such citation been offered by the majority.

Under current practices, a person charged with crime is protected from incompetent counsel by an integrated bar, experienced trial judges, a complete review of the entire record by an appellate court, and in an extraordinary case a full factual hearing in a habeas corpus proceeding. I think that is adequate. The order of remand should not issue.

Petition for rehearing denied October 21, 1971.

Appealed to Supreme Court November 1, 1971.