[No. 1120-3.    Division Three.    January 8, 1975.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY S. WILKINSON, *Appellant.*

*Richard L. Cease, Public Defender,* and *Richard F. Ayres, Jr., Assistant,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Fred J. Caruso, Deputy,* for respondent.

McINTURFF, J.—Prior to selecting a jury on the morning set for trial the defendant requested the court to discharge counsel and asked for a continuance to obtain other counsel. The court denied the request and defendant appeals from his conviction of robbery. The defendant is represented by other counsel on this appeal.

Defendant's first contention is that he was prejudiced in his defense because the trial court denied his request to discharge his retained attorney and appoint a substitute. Defendant bases his objection on a lack of trust and confidence in counsel, counsel's inadequate preparation for trial, a disagreement as to the witnesses to be called, and the fee arrangement.

The information charging the defendant with robbery was filed on August 11, 1972, and counsel represented the defendant at that time. In November 1972 defendant's counsel, Mr. Don Shaw, brought to the prosecutor's office a letter signed by the defendant informing them that he desired to withdraw from the case. Subsequently the defendant changed his mind and decided to retain Mr. Shaw.

Prior to the commencement of the trial on the morning of March 12, 1973, the defendant stated to the court his reasons for requesting new counsel: "I don't feel—the main part is the way he intends to represent my case, and the

way he intends to do it." Counsel said that he was prepared to represent the accused, and that he had statements from two of the four witnesses he had not proposed to call. The defendant did not want one of the witnesses to appear on his behalf and wanted two other people with whom counsel at that time was not familiar. After a short recess counsel indicated that there remained some disagreement as to the witnesses to be called but stated that the dispute over the fee problem was "all right." Defendant stated to the court he was willing to go ahead but "under duress." Mr. Caruso, from the prosecutor's office, indicated that he would resist the motion to change counsel because of the difficulty and cost involved in securing an out-of-state witness from California; and that if necessary, a public defender could be prepared to defend the case in 1 day. The court felt that since defendant's counsel was familiar with the case a public defender could not, on a few days' notice, do the kind of job as defendant's attorney was probably capable of doing at that time. Additionally, the trial had been set since February 2, 1973, and the court decided it was rather late to change counsel.

■ ■ It is within the sound discretion of the trial court to decide whether the dissatisfaction of the accused with his counsel merits the appointment of new counsel prior to trial.[1] This rule applies whether counsel is appointed or retained.[2] The general rule is that only when the incompetence and neglect of counsel results in a violation of a constitutional right by reducing a trial to a farce, will a new trial be granted.[3] Counsel is allowed wide latitude and flexibility in choice of methodology to be used, action to be taken or avoided, and trial tactics.[4]

[1] *State v. Shelton,* 71 Wn.2d 838, 840, 431 P.2d 201 (1967); *State v. Lytle,* 71 Wn.2d 83, 84, 426 P.2d 502 (1967).

[2] *State v. Robinson,* 75 Wn.2d 230, 234, 450 P.2d 180 (1969); *State v. White,* 5 Wn. App. 283, 286, 487 P.2d 243 (1971), *rev'd on other grounds,* 81 Wn.2d 223, 500 P.2d 1242 (1972).

[3] *State v. Mode,* 57 Wn.2d 829, 360 P.2d 159 (1961); *State v. Keller,* 65 Wn.2d 907, 908-09, 400 P.2d 370 (1965).

[4] *State v. Piche,* 71 Wn.2d 583, 430 P.2d 522, *cert. denied,* 390 U.S. 912 (1967); *State v. Thomas,* 71 Wn.2d 470, 472, 429 P.2d 231 (1967).

Counsel cites *State v. Bullock*, 71 Wn.2d 886, 431 P.2d 195 (1967), for the proposition that prior to trial an accused may insist upon his rights to have trust and confidence in his counsel.[5] An analogous situation occurred in *State v. Shelton*, 71 Wn.2d 838, 431 P.2d 201 (1967) where the accused, before trial, requested new counsel because he allegedly lacked confidence in his court-appointed attorney.

Shortly before the trial, and again after the jury had been selected, appellant informed the trial court that he had asked his court-appointed attorney to resign because "I couldn't put my confidence in . . . [him]." Appellant gave no reason for his lack of confidence in his counsel; pointed to no area of disagreement between them; and failed to point out wherein counsel had in any way failed or refused to adequately advise or aid him in his defense. Furthermore, the request came after court-appointed counsel had prepared the case for trial. It is inferable that delay may have been appellant's motive in making the request. The determination of whether or not the dissatisfaction with his court-appointed counsel by an indigent accused person is justified and warrants appointment of another attorney *rests in the sound discretion of the trial court. State v. Lytle, ante* p. 83, 426 P.2d 502 (1967). We find no abuse of discretion here.

(Italics ours.) *State v. Shelton, supra* at 839-40.

From the colloquy which occurred prior to trial between the attorneys and the defendant and the court it is apparent that the defendant did not agree with the manner in which counsel intended to handle his case; simply, his argument concerns the question of fees, and the witnesses that were to be called. There is some indication that counsel did not discuss the case with the defendant to his satisfaction.

We quote from *State v. Forbes*, 74 Wn.2d 420, 421, 445 P.2d 204 (1968):

---

[5]The court stated at pages 891-92:

"The right to defend one's self and the necessity of the defendant to have trust and confidence in his counsel are propositions which defendant can insist upon before trial is convened. However, when they are asserted during trial they are necessarily limited in extent by the necessity of having an orderly proceeding."

Our holding in *State v. Piche*, 71 Wn.2d 583, 590, 430 P.2d 522 (1967), is appropriate with respect to this assignment of error:

> To assure the defendant of counsel's best efforts then, the law must afford the attorney a wide latitude and flexibility in his choice of trial psychology and tactics. If counsel is to be stultified at trial by a post trial scrutiny of the myriad choices he must make in the course of a trial: whether to examine on a fact, whether and how much to cross-examine, whether to put some witnesses on the stand and leave others off —indeed, in some instances, whether to interview some witnesses before trial or leave them alone—he will lose the very freedom of action so essential to a skillful representation of the accused.

The decision to call witnesses is a legitimate area of counsel's trial strategy and does not necessarily deprive a defendant of the effective assistance of counsel at trial.[6] As the court observed in *State v. Roberts*, 69 Wn.2d 921, 923, 421 P.2d 1014 (1966):

> The effectiveness of representation or the competence of counsel is not measured by acquittal or conviction. The test is: does the record, as a whole, show that the accused was accorded a fair and impartial trial? *State v. Lei*, 59 Wn.2d 1, 365 P.2d 609 (1961), and cases cited.

Ultimately, the decision rests upon whether the trial court abused its discretion in denying a continuance.[7] The trial judge, in making his decision, applied the American Bar

---

[6] *State v. Floyd*, 11 Wn. App. 1, 2, 521 P.2d 1187 (1974); *State v. Thomas*, 71 Wn.2d 470, 472, 429 P.2d 231 (1967).

[7] In *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974), the court stated:

"[W]e have noted that continuances . . . in criminal cases involve such disparate elements as surprise, diligence, materiality, redundancy, due process, and the maintenance of orderly procedures; *and that this court leaves the decision largely within the discretion of the trial court*, to be disturbed only upon a showing that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied." (Citations omitted. Italics ours.) *See also Ungar v. Sarafite*, 376 U.S. 575, 11 L. Ed. 2d 921, 84 S. Ct. 841 (1964); *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968).

Association Standards for Criminal Justice Relating to The Defense Function,[8] specifically paragraph (b) of section 5.2, which basically states that it rests with defense counsel what witnesses should be called, along with other strategic and tactical decisions.

The matter concerning attorney's fees was resolved prior to trial, and although there was disagreement concerning the witnesses to be called, this is a matter of trial psychology or tactics and was resolved by the court under the noted standards for criminal justice. The seeming inability of the defendant to make up his mind concerning whether to keep his counsel was a proper matter for the court to take into consideration since he had previously decided to discharge him but changed his mind. Relying upon these facts and the strong presumption that counsel, regularly and actively engaged in the practice of the law, are

---

[8]In 2 ABA Project on Standards for Criminal Justice, The Prosecution Function and the Defense Function, section 5.2 at 237-38 (1971), entitled Control and direction of the case, states:

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf.

(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.

(c) If a disagreement on significant matters of tactics or strategy arises between the lawyer and his client, the lawyer should make a record of the circumstances, his advice and reasons, and the conclusion reached. The record should be made in a manner which protects the confidentiality of the lawyer-client relation.

In the commentary on strategy and tactics, *supra* at 240, it is stated:

Because these decisions [tactical ones such as which witnesses to call and in what sequence] require the skill, training and experience of the advocate, the power of decision on them must rest with the lawyer, but that does not mean that he should completely ignore his client in making them. The lawyer should seek to maintain a cooperative relationship at all stages, while maintaining also the ultimate choice and responsibility for the strategic and tactical decisions in the case.

competent,[9] we hold that the trial court, under the circumstances, did not abuse its discretion in denying a motion for continuance.

Other cases cited by counsel[10] involved a much more serious misfeasance of counsel, and are not apropos.

Lastly, defendant contends that counsel's attempt to suborn a witness was imputed to the defendant and resulted in prejudicial error. A factual statement is necessary to understand what took place. During the trial Judy A. Johnson, a former girl friend of defendant's, was called to the stand as a witness for the prosecution. She had given a statement to the police that the defendant left her premises at 9:30 and on cross-examination she was asked by defendant's counsel about a sworn statement signed by her, that had been in his possession since June 21, 1972. Mrs. Johnson testified that the June 21, 1972, statement attributed to her was false and had in fact been prepared for her signature by defendant's counsel, knowing the statement to be false. Thus she implicated counsel in an attempt to suborn perjury.[11] This court does not have the benefit of any statement by defendant as to whether he told Mrs. Johnson to swear to a statement which he knew to be untrue.

Counsel cites *State v. Floyd, supra,* for the proposition that it is never "permissible to encourage or suggest to a witness that he testify falsely, or even to allow false or misleading testimony to stand uncorrected." If this was error, and we do not decide, the harmless-error rule is enunciated in *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967);

> before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of

---

[9] *State v. Forbes, supra.*

[10] *Brubaker v. Dickson,* 310 F.2d 30 (9th Cir. 1962), *cert. denied,* 372 U.S. 978, 10 L. Ed. 2d 143, 83 S. Ct. 1110 (1963); *In re Saunders,* 2 Cal. 3d 1033, 472 P.2d 921, 88 Cal. Rptr. 633 (1970).

[11] RCW 9.72.110.

applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, . . .

(Footnote omitted.) [12]

The fact that defendant was positively identified as the person who committed the robbery by three employees working in the grocery store, convinces us beyond a reasonable doubt that, even if the testimony in question elicited by counsel on cross-examination had been eliminated from the trial, the verdict of the jury would have been the same.

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Petition for rehearing denied February 13, 1975.

Review denied by Supreme Court April 28, 1975.

---

[12]*State v. Mack*, 80 Wn.2d 19, 490 P.2d 1303 (1971); *State v. Finnegan*, 6 Wn. App. 612, 624, 495 P.2d 674 (1972).