[No. 17120–8–I.   Division One.   May 28, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. ROGER
DOUGLAS CAMERON, *Appellant*.

*Roger Douglas Cameron,* pro se, and *C. M. Hassenstab* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Mac-Duffie Setter* and *Ronald C. Hardesty, Deputies,* for respondent.

RINGOLD, J.—The defendant, Roger Douglas Cameron, was found guilty by a jury of second degree possession of stolen property, a white station wagon. He appeals the judgment and sentence, arguing that the trial judge should have recused himself. He also contends that the trial court erred by not appointing substitute defense counsel and by admitting certain evidence. Finding no error, we affirm.

Kendra M. Jones testified for the State. Jones and Cameron had been dating each other during the 3 months prior to Cameron's arrest. Cameron had been staying intermittently at Jones' apartment, but Jones wished to break off their relationship.

Jones testified, over a defense objection, that on the evening of June 5, 1985, Cameron called her and stated that he and another man had stolen two Trans Ams (Pontiac automobiles) and were planning to drive them to California. Jones reported this call to the police. She stated that just before midnight that same night, Cameron drove up to her apartment building in a white station wagon. She again called the police and was on the telephone with the 911 operator as Cameron knocked on the door of her fifth floor apartment. Jones related that Cameron asked her to open the door and stated that he had been hurt in a wreck. According to Jones, Cameron then said, "God, she's calling the cops," and left.

Jones went to the apartment window and then saw Cameron enter the white station wagon just before a police car driven by Officer Brandland came on the scene. Officer

Brandland testified that he saw Cameron in the station wagon. Cameron exited the station wagon and walked back toward the apartment building.

Officer Brandland called out to Cameron to stop and asked him if he owned the station wagon. Cameron replied, "No, it belongs to a friend of mine. I was just trying to find a light for a cigarette." Cameron then asked if he was under arrest. Brandland replied "no", but continued to question Cameron as other officers arrived at the scene. Brandland stated that Cameron then told him that he had never been in the station wagon. At this point Brandland placed the defendant under arrest. Another officer gave Cameron his *Miranda*[1] rights.

The police impounded the station wagon and later searched it, finding a bag containing some of Cameron's personal effects. Brandland also found the keys to the station wagon when he was cleaning out his patrol car, which had been used to transport Cameron to the police station. Subsequently the police discovered that the station wagon had been stolen.

On July 10, 1985, Judge Byron L. Swedberg presided over a suppression hearing at which the defendant was represented by Jon Ostlund of the Whatcom County Public Defender's Office. Defense counsel asked that Cameron's statements and the keys to the station wagon be suppressed as the product of an illegal arrest. The motion was denied.

On July 18, 1985, Cameron made an equivocal request that Judge Swedberg remove Ostlund as his attorney and allow Cameron to proceed pro se. At the start of the trial on July 22, 1985, Cameron requested that Ostlund be replaced with another attorney and that Judge Swedberg recuse himself from presiding over the trial. Both requests were denied.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

## Dissatisfaction With Appointed Counsel

██ Cameron contends that he was denied a fair trial, because he was forced to proceed with a lawyer that he did not want because of a disagreement over trial tactics. The defendant argues that the trial judge should have discharged Ostlund and appointed other counsel. "The determination of whether or not the dissatisfaction with his court–appointed counsel by an indigent accused person is justified and warrants appointment of another attorney rests in the sound discretion of the trial court." *State v. Shelton*, 71 Wn.2d 838, 840, 431 P.2d 201 (1967).

One week after the suppression hearing, Cameron indicated to the trial court a desire to proceed pro se. Cameron stated, "I believe my lawyer has fallen short in his duty as a lawyer." After being questioned by the trial court about whether he would proceed with Ostlund as his attorney Cameron stated, "If I knew he wouldn't have any trickery and do the law in the proper way, I would accept him, but I have seen different."

Cameron's request to proceed pro se was equivocal and properly denied by the trial court. *State v. Garcia*, 92 Wn.2d 647, 655, 600 P.2d 1010 (1979). The defendant also failed in his initial hearing regarding removal of counsel to give any reasons for his dissatisfaction with Ostlund. The trial court, therefore, did not err in making its initial ruling to have Ostlund continue as defense counsel. *See Shelton*, at 839–40; *State v. Sinclair*, 46 Wn. App. 433, 730 P.2d 742 (1986).

The first day of trial, Cameron reiterated his request to have Ostlund removed as his counsel and asked that another attorney be appointed. The trial court conducted a lengthy inquiry into Cameron's dissatisfaction with Ostlund and concluded that new counsel would not remedy any problems. The next day, after the jury was impaneled, the defendant repeated his request to remove Ostlund as his

attorney and requested a continuance. The trial court again denied his request.

Cameron relies upon federal case law which holds that it is a denial of an accused's Sixth Amendment right to counsel to proceed to trial with an attorney with whom the accused is embroiled in an irreconcilable conflict. *E.g., Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970); *United States v. Williams,* 594 F.2d 1258 (9th Cir. 1979).[2] Nonetheless, the requested continuance and the question of whether the conflict between Ostlund and Cameron merited appointment of new counsel is within the sound discretion of the trial court. *State v. Wilkinsen,* 12 Wn. App. 522, 524–26, 530 P.2d 340 (1975).

It is evident from the trial court's inquiry that Cameron and his attorney disagreed on trial strategy. Cameron was also dissatisfied with what he perceived as his lawyer's failure to supply him with the transcript of the suppression hearing and with law books necessary for him to help in preparing his defense. Ostlund demonstrated to the court that he had supplied Cameron with the legal materials he requested and would discuss all legal matters with Cameron thoroughly. Initially, Ostlund did not think it was necessary to order the transcript of the CrR 3.5 hearing, but he later ordered it transcribed and gave it to Cameron.

The disagreement on trial strategy concerned Cameron's wish to call two witnesses to testify at trial and Ostlund's motion in limine. Ostlund made every attempt to locate one of the witnesses, who was unavailable. The other witness was Cameron's sister, and Cameron did not explain how her testimony would be relevant. The defendant did not want Ostlund to attempt to exclude Jones' testimony concerning his admitted theft of two Trans Ams. Cameron's attorney on appeal, however, is arguing that the failure to exclude this evidence was error. Ostlund's decision to make a

---

[2]There is no assertion that Ostlund performed below the standard of acceptable representation required by the Sixth Amendment. A review of the record indicates that Cameron was well represented by Ostlund.

motion in limine was sound and did not create the type of irreconcilable conflict which requires appointment of a new attorney. *See United States v. Jones,* 512 F.2d 347 (9th Cir. 1975).

Unlike *Brown* and *Williams,* the trial court here made a lengthy inquiry into Cameron's dissatisfaction with defense counsel. Cameron stated that he had disclosed all of his concerns to the court. The trial court did not abuse its discretion in refusing to appoint a different attorney after ascertaining that new counsel would not solve any of the problems Cameron raised.[3]

### RECUSAL OF TRIAL JUDGE

On July 23, 1985, Cameron filed a document entitled "Petition of Grievances", which stated that the trial judge was prejudiced against Cameron and that he should recuse himself. This reiterated an oral request made the previous day. Cameron argues that under RCW 4.12.040–.050 the trial judge was required to recuse himself.

RCW 4.12.040 provides in part:

> No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established as hereinafter provided that said judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause.

RCW 4.12.050 provides in part:

> Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge: *Provided, That such motion and affidavit is filed and called to the attention of the judge before he shall have made any ruling whatsoever in the case,* either on the motion of the party making the affidavit, or on the motion of any other party to the action, of the hearing of which the

---

[3]The trial court permitted Cameron to give his own opening statement.

party making the affidavit has been given notice, *and before the judge presiding has made any order or ruling involving discretion . . .*

(Italics ours.)

By the time the petition was filed, the trial judge had already made two discretionary rulings. He had refused to appoint a new attorney, and he had denied the defense motion to suppress evidence. Assuming that Cameron's "Petition of Grievances" qualifies as an affidavit of prejudice, the trial judge properly refused to recuse himself, because the motion was not timely made. *See* RCW 4.12-.050.

▮ Absent compliance with the statute, a party must demonstrate prejudice on the part of a judge. *See State v. Franulovich,* 89 Wn.2d 521, 573 P.2d 1298 (1978). The record does not disclose any evidence of bias. "Casual and unspecific allegations of judicial bias provide no basis for appellate review, even when asserted by a pro se litigant." *Rich v. Starczewski,* 29 Wn. App. 244, 246, 628 P.2d 831 (1981). Cameron has failed to demonstrate that the trial judge's refusal to recuse himself was error.

## POLICE INVESTIGATION

Cameron contends that Officer Brandland exceeded the scope of a permissible *Terry*[4] stop. The defendant argues that the questioning regarding the white station wagon amounted to custodial interrogation and that he should have received *Miranda* warnings.

In *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the Supreme Court held that for an investigative stop to be reasonable under the Fourth Amendment, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* at 21. "Less than probable cause is required because the stop is significantly less intrusive than an arrest." *State v. Kennedy,* 107 Wn.2d 1, 6, 726 P.2d 445 (1986). Likewise, to

---

[4]*Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

avoid violation of Const. art. 1, § 7, before stopping someone a police officer must be able to point to specific articulable facts which indicate "a substantial possibility that criminal conduct has occurred or is about to occur." *Kennedy,* at 6.

Officer Brandland was responding to a call reporting that a man had just left an apartment building and entered a white station wagon after disturbing a resident of the building. Brandland also knew that the man was suspected of stealing a Trans Am. Brandland saw Cameron in the station wagon when he pulled up. Thus, Brandland had an articulable suspicion that Cameron was involved in illegal activity. The question then becomes did Brandland exceed the permissible scope of a *Terry* stop.

In *State v. Williams,* 102 Wn.2d 733, 740, 689 P.2d 1065 (1984), the Supreme Court listed three factors relevant in determining whether an intrusion is so substantial that it exceeds the permissible scope of a *Terry* stop, and requires probable cause to make the stop reasonable under the Fourth Amendment. The three factors are: (1) the purpose of the stop; (2) the amount of physical intrusion upon the suspect's liberty; and (3) the length of time the suspect is detained. *Williams,* at 740.

Cameron argues that Brandland's aggressive positioning of his patrol car behind the station wagon and his acknowledgment that he would not have permitted Cameron to leave the scene constituted an excessive physical intrusion. The police, however, may detain a person for a reasonable period of time to ascertain whether the person is involved in criminal activity, as long as the investigation is focused upon the person detained. *Williams; State v. Moon,* 45 Wn. App. 692, 695, 726 P.2d 1263 (1986). Cameron was not searched, handcuffed, or put in a patrol car until he was placed under arrest. Before Cameron's arrest, Officer Brandland confined his investigation to questioning Cameron. Brandland did not exceed the scope of a permissible *Terry* stop.

Cameron's contention that he should have received

*Miranda* warnings prior to being questioned by Brandland is also without merit. "Mere suspicion, before the facts are reasonably developed, is not enough to turn the questioning into a custodial interrogation." *State v. Hilliard*, 89 Wn.2d 430, 436, 573 P.2d 22 (1977). Brandland did not have probable cause to arrest Cameron for prowling until Cameron contradicted himself and said he had never been in the station wagon. Prior to that Brandland only had a suspicion that Cameron was involved in illegal activity; therefore, *Miranda* warnings were unnecessary. *Hilliard.*

## ER 404(b)

■ Cameron contends that under ER 404(b) the trial court should have excluded the statement by Jones that Cameron admitted stealing two Trans Ams. Assuming the trial court erred, the error is harmless. "Evidentiary errors under ER 404 are not of constitutional magnitude. We must determine, therefore, within reasonable probabilities, if the outcome of the trial would have been different if the error had not occurred." *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984).

The untainted evidence against Cameron was substantial. The white station wagon was stolen in King County. Two witnesses testified that they saw Cameron in the station wagon. The police found a bag containing Cameron's personal effects in the station wagon. The police also discovered the keys to the station wagon in the patrol car in which Cameron had been placed. Cameron, however, testified that he had never been in the station wagon and claimed Brandland and Jones were lying.[5] It is unlikely, considering the physical evidence and testimony presented, that the addition of Jones' statement regarding the Trans Ams affected the outcome of the trial. The error in admitting those statements, therefore, was harmless. *See Jackson.*

---

[5]In the appellant's pro se supplemental brief he again argues that everyone was lying. Credibility of the witnesses is for the trier of fact and cannot be questioned on appeal. *State v. Lawson*, 37 Wn. App. 539, 543, 681 P.2d 867 (1984).

The judgment and sentence is affirmed.

SCHOLFIELD, C.J., and PEKELIS, J., concur.