# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| MICHAEL W. ALDRIDGE, | No. 49725-5-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF LABOR & INDUSTRIES, | |
| Respondent. | |

BJORGEN, J. — Michael Aldridge filed appeals with the Board of Industrial Insurance Appeals (Board) from two administrative actions taken by the Department of Labor and Industries (Department) arising under his worker's compensation claim.  Aldridge then appealed the Board's decisions to superior court, which denied Aldridge's appeal and granted the Department's motion to dismiss under CR 12(b)(6) for failure to state a claim upon which relief can be granted.  Aldridge now appeals the superior court's decision.

First, Aldridge argues that a claims manager's response to a request he made on the Department's online secure message portal improperly added conditions to his receipt of benefits and constituted final agency action that was reviewable by the Board.  Second, he argues that racial animus motivated the Board's decision to have armed security present at his hearings. Third, he argues that the superior court erred when it denied his motion for a new trial judge because Judge Wilson could not be fair and impartial in deciding the motion by virtue of her

prior employment with the Washington State Attorney General's Office. Finally, he argues the award of statutory costs was erroneous and that he should be awarded attorney fees and costs on appeal.

We disagree with Aldridge's contentions and affirm the superior court.

FACTS

Aldridge filed a worker's compensation claim with the Department and began receiving benefits for an injury he suffered. Subsequently, Aldridge filed an appeal to the Board of two different decisions made by the Department relating to those benefits. The Board assigned each appeal a separate docket number. This appeal concerns each of those two docket numbers that were consolidated at the superior court.

A.      Board Docket No. 13 22304

In 2011, the Department suspended Aldridge's benefits for "fail[ing] to submit to and/or cooperate with a medical examination." 1 Administrative Record (AR) at 158. The Department order that suspended his benefits specified that "[t]he suspension will remain in effect until you submit to and cooperate with the examination, or until the claim is closed, whichever occurs first." *Id*.

On July 25, 2013, Aldridge agreed to comply with an independent medical examination (IME) ordered by the Department. The Department's IME panel consisted of an orthopedist, a neurologist, and a chiropractor. The Department scheduled an appointment with each panelist; however, the chiropractor's appointment had to be rescheduled. On September 17, both the orthopedist and the neurologist examined Aldridge. The physicians concluded that magnetic resonance imaging (MRI) was necessary to complete the IME.

On September 18, Aldridge contacted the Department through its online secure messaging portal, which allows injured parties to communicate with the Department's claims managers. Aldridge had previously notified the Department on July 25 that he would comply with the IME, and requested that his benefits be reinstated effective July 25. On September 25, the claims manager handling Aldridge's file responded as follows:

> Time loss was suspended on your claim on 8/24/11. Lifting a suspension of time loss and resuming time loss are two separate issues. Once full cooperation is demonstrated I can review lifting the suspension. Full cooperation would include completing the MRI that was recommended by the examiners, and attending the rescheduled chiropractic exam on 10/2/13. Paying time loss would be based on current medical opinion on ability to work such as the IME report and/or other medical received.

1 AR at 154.

Aldridge appealed to the Board the claims manager's response to his secure message and once more requested that his benefits be reinstated effective July 25. He also claimed that the response to his secure message placed additional conditions on reinstating his benefits that did not conform to the Industrial Insurance Act (IIA), Title 51, RCW. In an order dated March 5, 2014, the Department reinstated Aldridge's wage replacement benefits (or time-loss compensation) effective September 17, 2013, which was the date of his initial orthopedic and neurologic examinations.

At the hearing on Aldridge's administrative appeal, it appears the Department requested that security be present. Aldridge requested a continuance because he wanted to know why a state trooper was sitting outside the courtroom. The Industrial Appeals Judge (IAJ) stated, "[S]ecurity was requested for this hearing. As of this morning, I was told that it was not going to be provided. So I am unaware that there is an officer out there." 1 AR Transcripts (Oct. 27,

3

2015) at 66. Aldridge asked the IAJ why an officer would be requested for this hearing, and the IAJ responded, "I have no idea." *Id*. The IAJ noted that "[t]he trooper has not been present in the courtroom . . . [s]o I don't see that it's influenced me in any way." *Id*. at 67. The IAJ denied Aldridge's motion for a continuance regarding the issue of security. The IAJ subsequently issued a proposed decision that affirmed the content of the secure message, and stated, among other things, as follows: "Procedurally, if Mr. Aldridge wanted to reach the effective date of reinstatement that appeal would . . . be[] to the orders that reinstated his time-loss compensation . . . to a certain date." 1 AR at 24.

Aldridge petitioned for review to the Board. The Board denied Aldridge's petition and adopted the proposed decision as its final order.

B.    Board Docket No. 14 15505

As part of administering his claims, the Department also requested that Aldridge fill out a vocational services intake form. Aldridge failed to comply. The Department suspended his time loss benefits effective September 5, 2014, but reinstated his benefits effective October 3 in an order dated October 16. Aldridge appealed the October 16 order to the Board.

During a telephone conference before the IAJ regarding Docket No. 14 15505, Aldridge stated that he thought his name was "flagged," and he asked the IAJ if there "will . . . be security provided at the hearings." 2 AR Transcripts (Jan. 6, 2015) at 21. The IAJ responded, "I do have a note in my file that in the past, Mr. Aldridge, you've been at least perceived as hostile and that security was necessary." *Id*. at 21. Aldridge said, "I am personally offended, and I want to know why somebody has perceived me as being hostile and why I wasn't given an opportunity to address any allegations of being hostile." *Id*. at 22. Aldridge requested a judge outside the

4

Board be assigned to his appeals and requested an evidentiary hearing on the issue of security.

He claimed, "What it is, essentially, is that because I'm black and, I guess, intimidating looking,

somebody has decided that I'm some sort of a threat and I'm hostile." *Id*. at 23.

At a subsequent conference, the issue of security arose again. The Department

maintained its position that "security should be present when Mr. Aldridge has an appeal." 2 AR

Transcripts (Feb. 6, 2015) at 19. The IAJ requested briefing on the issue and asked for "specifics

as to the reasons why you [the Department] think that security is necessary." *Id*. at 21. Aldridge

asked the IAJ to recuse himself because he believed the IAJ had formulated a bias against him.

The IAJ stated he would have Aldridge's case assigned to another judge.

The Department submitted briefing on the security issue and asked the Board to provide

security during all of Aldridge's hearings. The Department included a declaration and a letter

from an assistant attorney general, which stated that Aldridge attempted to intimidate her (and

another attorney) during different appeals. The declaration alleged that Aldridge obtained

personal information about an IAJ[1] who expressed some concern for her safety. The declaration

---

[1] The declaration stated, in part:

> In 2010, Mr. Aldridge represented his wife, Colleen Aldridge, in an appeal before the Board under Docket No. 10 15903. The hearing judge issued her decision that was unfavorable to Mr. Aldridge. In the Petition for Review that was filed to the Proposed Decision and Order issued by the hearing judge, Mr. Aldridge included a section in the Petition for Review alleging that the hearing judge should have recused herself for bias and prejudice. Mr. Aldridge alleged that because the judge had received a traffic infraction issued by a Washington State Patrol trooper one day before issuing her letter of September 28, 2010, changing a hearing from a telephonic hearing to a hearing requiring personal appearance, the judge was biased against him. Mr. Aldridge alleges that the hearing judge was aware that Mr. Aldridge was a retired Washington State Patrol trooper. Mr. Aldridge included a copy of the traffic infraction, which was a speeding ticket. The [IAJ] who issued the Proposed Decision and Order expressed concern that Mr. Aldridge was

also reiterated what the assistant attorney general[2] reported in her letter.

The IAJ granted the Department's request for security and entered an order that outlined its reasoning. The IAJ made clear that "this ruling applies only to this appeal." 2 AR at 262 n.1.

After a hearing on the merits of Aldridge's claim, the IAJ issued a proposed decision reversing the October 2014 order. The IAJ concluded that the Department had not complied with WAC 296-14-410(4)(b), which provided Aldridge 30 days to respond in writing to the Department's letter purporting to suspend his benefits.

Though the IAJ ruled in his favor, Aldridge filed a petition for review to the Board. Aldridge cited what he perceived as racial bias in the IAJ's decision to have security present. The Board denied the petition and adopted the IAJ's proposed decision as its final decision.

C.      Aldridge's Appeal of the Board's Decisions in Both Dockets to the Superior Court

Aldridge appealed the Board's decisions in both dockets to the superior court. On August 1, 2016 the Department moved for dismissal of both proceedings under CR 12(b)(6) for

---

obtaining information about her personal life and expressed some concern for her safety.
2 AR at 158.

[2] The declaration stated, in part:
    In a separate matter, I was advised by an Assistant Attorney General who appears before the Board that in a proceeding Mr. Aldridge had referred to her by her married name, which is not the name she uses when she practices before the Board. She believed Mr. Aldridge was using her married name in an attempt to intimidate her. The Assistant Attorney General also related a conversation where another woman attorney disclosed that Mr. Aldridge had made a reference to her that he knew where she lived. This attorney felt that the remark was intended to show that he had personal information about her so that she would feel intimidated and vulnerable.
2 AR at 158.

failure to state a claim upon which relief can be granted. On August 26, the superior court conducted a hearing on the motion. On October 7, the superior court issued an oral opinion, which granted the Department's motion to dismiss. It also entered a written order.

D.     Order Granting Department's CR 12(b)(6) Motion to Dismiss

The superior court order stated, in pertinent part:

1.  The Court has jurisdiction over the parties to, and the subject matter of, this appeal.

2.  The undisputed factual record establishes that:

> Under Dckt. 13 22304, Mr. Aldridge identified the issue, in both his Board appeal and opening brief in this court, as what was the effective date of reinstatement of his time-loss compensation. The relief Mr. Aldridge seeks is having his time-loss compensation benefits reinstated effective July 25, 2013 in his appeal of Dckt. 13 22304. The effective date of reinstatement of Mr. Aldridge's time-loss compensation benefits, however, was not decided by the Department, was outside the scope of the Board's review, and is outside the scope of this Court's review.
> Under Dckt. 14 15505, Mr. Aldridge identified the issue of whether the Board exhibited racial bias against him with respect to the following decisions: a) Industrial Appeals Judge Watkins' decision not to enforce Industrial Appeals Judge Jinhong's request that the Department brief specific reasons why armed security was necessary during Board proceedings where Mr. Aldridge appeared in person, b) Industrial Appeals Judge Timmons' denial of a hearing on the record on the security issue, c) Judge Timmons' denial of a 20-day extension for Mr. Aldridge to submit more information on the security issue, d) Judge Watkins' grant of the Department's request for security at Board proceedings, and e) Judge Watkins' decision not to recuse himself.
> Judge Watkins and the Board found in favor of Mr. Aldridge and ordered the Department to reverse its suspension order of September 5, 2014.
> RCW 51.52.110 allows anyone who is "aggrieved" by the final decision and order of the Board to appeal such order to superior court. No relief is available to Mr. Aldridge under Dckt. 14 15505, however, because he prevailed at the Board.

3.  Mr. Aldridge has not shown that he is entitled to the relief he seeks in his appeals from the Department's secure message in Dckt. 13 22304 and from the Department's suspension order in Dckt. 14 15505. The Department therefore is

entitled to judgment that Plaintiff's appeals of Dckt. 13 22304 and Dckt. 14 15505 in the present action should be dismissed for failure to state a claim for relief.

Clerk's Papers (CP) at 224-26.

E.      Motion for a New Trial

Aldridge filed a motion for a new trial under CR 59(a).  In his brief in support of his motion, Aldridge claimed, among other things, that superior court judge Wilson should have disclosed her prior employment with the Washington State Attorney General's Office.  He argued the failure to disclose prejudiced him.  The Department's response argued Aldridge was not prejudiced by Judge Wilson hearing the matter and Aldridge was not prejudiced by the timing of Judge Wilson's decision.

At a hearing on the motion, Aldridge maintained Judge Wilson should have disclosed her prior employment.  The State maintained its position that Aldridge did not demonstrate a conflict of interest.

Judge Wilson concluded that she could not identify "any evidentiary or any legal basis to grant the new trial, and based upon the evidence in the record and ultimately the court's decision, do not find that this is a case where substantial justice has not been done."  Verbatim Report of Proceedings (VRP) (Oct. 28, 2016) at 21.  She advised Aldridge as follows:

> The court was sworn in and took the bench approximately two years ago.  And for the first year of being on the bench, the court routinely informed every party to any State case of the court's prior employment before taking the bench.  After one year, the court determined that that routine advisement was not necessary.  And your case, I believe, was filed in 2016 – perhaps it was 2015 – after the timeframe when the court was sending those routine letters.  And that was the practice since that time.  Some parties have filed motions or requests, and those have been considered on a case-by-case basis.

VRP (Oct. 28, 2016) at 22.  The court denied Aldridge's request for a new trial.

Aldridge appeals.

## ANALYSIS

At the outset, we note that the procedural posture of this case prevents us from addressing many of Aldridge's arguments on their merits. RAP 10.3(a)(6) requires parties to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). The purpose behind RAP 10.3(a)(6) and related rules "is to enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority." *Hurlbert v. Gordon*, 64 Wn. App. 386, 400, 824 P.2d 1238 (1992). Although Aldridge is acting pro se, we hold him to the same standards for observing the rules as attorneys. *Westberg v. All-Purpose Structures Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

Although not explicitly stated in RAP 10.3(a)(6), it is implicit in the rule that the citations to legal authority should relate to the issues presented for review and should support the proposition for which such authority is cited. *Litho Color, Inc. v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 305, 991 P.2d 638 (1999). Some aspects of Aldridge's briefing fail RAP 10.3(a)(6). Accordingly, we only address the arguments under the IIA that do comply with that rule.

### I. MOTION TO DISMISS

A. Standard of Review

The superior court reviews the Board's determination de novo. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 179, 210 P.3d 355 (2009). The Board's decision is prima facie

9

correct under RCW 51.52.115, and the party challenging the decision must demonstrate by a preponderance of the evidence that the decision is incorrect. *Rogers*, 151 Wn. App. at 180.

Here, however, the superior court did not make a de novo determination of Aldridge's appeals to the Board pursuant to RCW 51.52.115. Instead, the superior court dismissed Aldridge's appeals of the Board decisions under CR 12(b)(6), which allows dismissal for the failure to state a claim upon which relief can be granted. An action may be dismissed under CR 12(b)(6) only if "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" *Lawson v. State*, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986) (quoting *Bowman v. John Doe*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985)). For purposes of a CR 12(b)(6) motion, the plaintiff's factual allegations are presumed to be true. *Lawson*, 107 Wn.2d at 448. We review CR 12(b)(6) dismissals de novo. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014), *aff'd*, 413 P.3d 1 (2018). Because Aldridge appeals a dismissal under CR 12(b)(6), we apply these standards.

C.      Board Docket No. 13 22304

Aldridge argues that the claims manager's response to a request he made via the Department's online secure message portal was a final order or decision that was reviewable by the Board. He also argues the response added requirements to the reinstatement of his time loss compensation benefits. We disagree.

Whenever the Department has made any order, decision, or award, it shall promptly serve it on the worker, beneficiary, employer, or other person. RCW 51.52.050(1). Persons who

choose to receive correspondence and other legal notices electronically shall be provided information to assist them in ensuring all electronic documents and communications are received. *Id.* A final order, decision, or award must also bear a statement that it will become final within 60 days from the date the order is communicated to the parties. *Id.* Whenever the Department has taken any action or made any decision relating to any phase of the administration of this title, the worker, beneficiary, employer, or other person aggrieved thereby may request reconsideration of the decision or action, or may appeal to the Board. RCW 51.52.050(2)(a).

The Department's response to Aldridge's online request did not decide the effective date of reinstatement of Aldridge's time loss compensation benefits. In fact, it did not decide anything with regard to Aldridge's claim—it simply reiterated that Aldridge must comply with the IME and outlined what compliance entailed.

In *Lenk v. Department of Labor & Industries*, 3 Wn. App. 977, 982, 478 P.2d 761 (1970), we noted that:

> [T]he board's and the superior court's jurisdiction is appellate only, and for the board and the trial court to consider matters not first determined by the department would usurp the prerogatives of the department, the agency vested by statute with original jurisdiction. . . . [I]f a question is not passed upon by the department, it cannot be reviewed either by the board or the superior court.

Because the Department's response did not decide the effective date of reinstatement of Aldridge's time loss compensation benefits, it cannot provide the basis for an appeal of that effective date and was not reviewable by the Board or the superior court. As such, Aldridge can prove no set of facts, consistent with the appeal, which would entitle him to relief on the issue of the effective date. *See Lawson*, 107 Wn.2d at 448.

Aldridge also argues the Department's response to his online request added requirements to the reinstatement of his time loss compensation benefits. He argues the response added the requirement of an MRI and that the IME report substantiate continued entitlement to time loss compensation benefits.

In this case, the Department apparently needed to evaluate Aldridge's temporary total disability and ability to work in order to substantiate his continued entitlement to time loss compensation benefits. "Temporary total disability ends when the claimant's condition becomes fixed and stable *or* he is capable of reasonably continuous employment at any kind of generally available work." *Butson v. Dep't of Labor & Indus.*, 189 Wn. App. 288, 299, 354 P.3d 924 (2015). In order to evaluate Aldridge, the Department ordered an IME. An IME could entail a variety of tests, and the MRI was just one of those tests the two physicians needed to conduct in order to properly evaluate Aldridge's entitlement to time loss compensation benefits. The Department's response simply reiterated that the Industrial Insurance Act obligated Aldridge to comply with the requirements of the IME, including the physicians' request for an MRI.

One important purpose of an IME is to allow the Department to substantiate continued entitlement to benefits. For example, an IME may be requested if the Department needs to establish when the accepted industrial injury has reached maximum medical improvement or to evaluate the worker's mental and/or physical restrictions as well as the worker's ability to work. WAC 296-23-307. The Department does not automatically reinstate benefits without an IME indicating that a particular claimant is still eligible—the claimant must show temporary total disability. *See Butson*, 189 Wn. App. at 299-302 (holding that the superior court did not err in finding that substantial evidence did not support Butson's claim of temporary total disability).

Here, the Department's response to Aldridge's request merely informed him that the IME report must substantiate his claim of continued entitlement to time loss compensation benefits.

For these reasons, the superior court did not err when it granted the Department's motion to dismiss Aldridge's appeal under CR 12(b)(6).

D.    Board Docket No. 14 15505

In this docket proceeding, Aldridge appeals the Department's suspension of his time loss benefits for failure to file a vocational services form. He argues that the superior court erred when it granted the Department's motion to dismiss his appeal under CR 12(b)(6). We disagree.

RCW 51.52.110 provides in relevant part:

> Within thirty days after a decision of the board to deny the petition or petitions for review upon such appeal has been communicated . . . such worker, beneficiary, employer or other person *aggrieved* by the decision and order of the board may appeal to the superior court.

(Emphasis added.) A party cannot appeal the Board's decision unless that party is aggrieved by the Board's decision and order. *Peterson v. Dep't of Labor & Indus.*, 22 Wn.2d 647, 651, 157 P.2d 298 (1945). Although the statute does not define the term "aggrieved," the term has been defined to mean "'a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or obligation.'" *Mestrovac v. Dep't of Labor & Indus.*, 142 Wn. App. 693, 704, 176 P.3d 536 (2008) (quoting *State v. A.M.R.*, 147 Wn.2d 91, 95, 51 P.3d 790 (2002)).

The Department argues that because the Board agreed with Aldridge on the merits of his claim, he cannot be deemed an aggrieved party. The Department is correct. WAC 296-14-410(4)(b) required the Department to provide Aldridge 30 days to respond in writing to the

Department's letter purporting to suspend his benefits. The IAJ concluded the Department did not provide the appropriate amount of time. The Board agreed and adopted the IAJ's proposed decision and order. Because Aldridge prevailed at the Board, there was no denial of a personal or property right; nor did the Board impose upon him any burden or obligation.

We recognize, though, that Aldridge's appeal does not appear to concern the merits of the Board's final decision and order; rather, he argues that racial animus motivated the IAJ's discretionary decision to have armed security present at his hearings. Aldridge claims that the IAJ purposely ruled in his favor to preclude further consideration of his argument regarding the Department's alleged racial animus. He reasoned, "[H]ad the [IAJ] ruled for the Department, the likelihood of a higher court considering the matter of armed security increased. [The IAJ] knew what to do to make the system work for the [Board] and the Department, and against Mr. Aldridge." Br. of Appellant at 11.

Yet, the record contains no support for Aldridge's speculation about why the IAJ ruled in his favor. The IAJ issued a separate order that addressed the Department's request for security. The IAJ's proposed decision and order on the merits, though, did not discuss the issue of security, and the Board's order denying Aldridge's petition for review likewise did not discuss the issue of security.

As noted, in *Lenk*, 3 Wn. App. at 982, we held that "if a question is not passed upon by the department, it cannot be reviewed either by the board or the superior court." Accordingly, the superior court was without jurisdiction to review the IAJ's discretionary decision to have armed security present—the superior court could only review whether the Board properly denied Aldridge's petition and whether the Board properly adopted the IAJ's proposed decision and

14

order as its final decision. The superior court determined no relief was available to Aldridge because he prevailed at the Board. We likewise have no jurisdiction to review the IAJ's discretionary decision to have armed security present under the IIA. We conclude that Aldridge was not an aggrieved party within the meaning of RCW 51.52.110 because he prevailed in the proceedings before the Board. Therefore, the superior court did not err when it granted the Department's motion to dismiss, as Aldridge failed to state a claim upon which relief could be granted.

We recognize the vital need to afford effective and robust legal remedies for claims of racial discrimination. Not every remedy, though, is designed to address every ill that could be within its reach. As described above, our authority in workers' compensation appeals is limited to issues decided in the administrative decisions under appeal. Thus, Aldridge's claim of racial discrimination is not within the scope of the appeal before us. Whether state or federal civil rights law would apply is similarly not before us.

### III. RECUSAL AND APPEARANCE OF FAIRNESS

Aldridge argues that the superior court erred when it denied his motion for a new trial. He contends that Judge Wilson could not be fair and impartial in deciding the motion by virtue of her prior employment with the Washington State Attorney General's Office. We disagree.

A.     Standard of Review

Washington cases have long recognized that judges must recuse themselves when the facts suggest that they are actually or potentially biased or prejudiced. *Tatham v. Rogers*, 170 Wn. App. 76, 93, 283 P.3d 583 (2012). We review a superior court judge's decision whether to recuse himself or herself for an abuse of discretion. *Kok v. Tacoma Sch. Dist. No. 10*, 179 Wn.

15

App. 10, 23-24, 317 P.3d 481 (2013). A superior court's decision will not be disturbed on appeal

unless its decision was manifestly unreasonable or based on untenable grounds or reasons.

*Tatham*, 170 Wn. App. at 87.

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

B.      Legal Principles

Subject to limitations, any party appearing in any action or proceeding in a superior court

may disqualify a judge from hearing the matter. Former RCW 4.12.050(1) (2009). Notice of

disqualification must be filed and called to the attention of the judge before the judge has made

any discretionary ruling in the case. Former RCW 4.12.050(1)(a). No judge of a superior court

of the state of Washington shall sit to hear or try any action or proceeding if that judge has been

disqualified. Former RCW 4.12.040(1) (2009). Still,

> [i]t is unusual to require a judge to recuse himself or herself from ruling on a motion for a new trial even where the motion is based on grounds that are critical of the trial judge. The trial judge is fully informed and is presumed to perform his or her functions regularly and properly without bias or prejudice.

*Tatham*, 170 Wn. App. at 87.

If notice of disqualification is not filed and called to the attention of the judge before the

judge has made any discretionary ruling in the case, a party must demonstrate prejudice on the

part of the judge. *State v. Cameron*, 47 Wn. App. 878, 884, 737 P.2d 688 (1987). An

affirmative showing of prejudice is required because we will not presume prejudice on the part

of an elected judicial officer. *Williams & Mauseth Ins. Brokers, Inc. v. Chapple*, 11 Wn. App. 623, 628, 524 P.2d 431 (1974). "'Casual and unspecific allegations of judicial bias provide no basis for appellate review, even when asserted by a pro se litigant.'" *Cameron*, 47 Wn. App. at 884 (quoting *Rich v. Starczewski*, 29 Wn. App. 244, 246, 628 P.2d 831 (1981)).

C.      Aldridge Failed to Demonstrate Prejudice

First, we note that Aldridge failed to file a notice of disqualification under former RCW 4.12.050. Therefore, Aldridge must demonstrate prejudice on the part of Judge Wilson.

Aldridge argues that Judge Wilson failed to disclose her employment history with the Washington State Attorney General's Office, which presented a reasonable question regarding her impartiality. Nevertheless, Aldridge concedes that Judge Wilson's biography was available on the Thurston County Superior Court website. Aldridge does not put forth any evidence on the record that Judge Wilson formerly was an employee of the department. He does not put forth evidence on the record that Judge Wilson had a personal or familial relationship with the attorneys representing the State. He has not cited any evidence in the record that Judge Wilson made comments that indicated she was prejudiced against him because of her prior employment. He has not put forth evidence on the record that Judge Wilson has an interest in the outcome of his worker's compensation claim. Quite simply, Judge Wilson's failure to disclose her prior employment with the attorney general's office before the pertinent hearing does not show that she was prejudiced against him. It merely shows she has a history of public service that she did not consider relevant to the issue of recusal. On the record, the connection between the attorney general's office and Judge Wilson is too attenuated to demonstrate prejudice.

Aldridge next argues that because Judge Wilson postponed a decision in his case, she was prejudiced against him. The complexities of litigation, however, can present myriad legitimate reasons to adjust the timing of a decision. Without more, postponing a decision does not demonstrate prejudice.

Because Aldridge has failed to demonstrate prejudice, we hold that Judge Wilson did not err when she denied Aldridge's motion for a new trial.

D.     Appearance of Fairness Doctrine

The appearance of fairness doctrine requires recusal where the facts suggest a judge is actually or potentially biased. *Tatham*, 170 Wn. App. at 93. The doctrine's basic standard is that a "reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing." *Tatham*, 170 Wn. App. at 96. The test for whether a judge's impartiality might reasonably be questioned is objective and assumes that a reasonable person knows and understands all relevant facts. *Tatham*, 170 Wn. App. at 96. We presume that the superior court performs its functions regularly and properly without bias or prejudice. *Tatham*, 170 Wn. App. at 96.

Aldridge argues Judge Wilson failed to disclose her employment history with the Washington State Attorney General's Office, which presented a reasonable question regarding her impartiality. Aldridge cites the Washington Code of Judicial Conduct (CJC) Rule 2.11 to support his argument that Judge Wilson should have been disqualified. CJC 2.11, comment 1 states, in part, "[A] judge is disqualified whenever the judge's impartiality might reasonably be questioned." Comment 5 states,

> A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification.

Aldridge claims, under the appearance of fairness doctrine, that Judge Wilson should have disclosed that she previously worked as an assistant attorney general, so he could have considered a possible motion for disqualification.

For the same reasons addressed above, a reasonable person with knowledge of all relevant facts would not reasonably question Judge Wilson's impartiality because she did not disclose her prior employment with the Washington State Attorney General's Office. *See Tatham*, 170 Wn. App. at 96. We presume that Judge Wilson performed her functions regularly and properly without bias or prejudice. The fact she worked for the Washington State Attorney General's Office, without more, does not demonstrate bias or prejudice.

Accordingly, we hold that Judge Wilson did not err when she denied Aldridge's motion for a new trial, because a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing. *Tatham*, 170 Wn. App. at 96.

## IV. ATTORNEY FEES

A.     Statutory Attorney Fees

Aldridge challenges the superior court's award of $200 to the Department for statutory attorney fees. We hold that this award was proper.

Chapter 4.84 RCW applies to appeals in the superior court from the Board. *Black v. Dep't of Labor & Indus.*, 131 Wn.2d 547, 557, 933 P.2d 1025 (1997). RCW 4.84.030 states, "In any action in the superior court of Washington the prevailing party shall be entitled to his or her costs and disbursements." Of these, RCW 4.84.080(1) sets the statutory attorney fees at $200.

Thus, the superior court did not err when it awarded the Department statutory attorney fees as the prevailing party.

B.      Aldridge's Request for Attorney Fees on Appeal

Aldridge requests attorney fees and costs on appeal. Under governing law, he is not entitled to them.

We note first that pro se litigants are generally not entitled to attorney fees for their work representing themselves. *Mitchell v. Dep't of Corr.*, 164 Wn. App. 597, 608, 277 P.3d 670 (2011); *cf. Stiles v. Kearney*, 168 Wn. App. 250, 277 P.3d 9 (2012) (A pro se defendant who is an attorney can receive attorney fees for his efforts in defending against a complaint).

More to the point, the award of attorney fees in Board appeals is controlled by RCW 51.52.130, which "encompasses fees in both the superior and appellate courts when both courts review the matter." *Hi-Way Fuel Co. v. Estate of Allyn*, 128 Wn. App. 351, 363-64, 115 P.3d 1031 (2005). This statute allows the court to fix attorney fees if it reverses the Board's order and grants an award to the disabled worker. RCW 51.52.130. Because we do not reverse the Board's orders, Aldridge's claim for attorney fees and costs fails.

## CONCLUSION

We affirm the superior court.

A majority of the panel having determined that this opinion will not be printed in the

No. 49725-5-II

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, P.J.

Sutton, J.